**People of the State of Illinois, Plaintiff-Appellee, v. William T. Foster, Defendant-Appellant.**

Gen. No. 50,842.

First District, First Division.

June 13, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel) for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James B. Zagel, Assistant State's Attorneys, of counsel) for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

After a bench trial, defendant was found guilty of the offense of unlawful possession of a narcotic drug. He was sentenced to the penitentiary for a term of two

years to two years and one day. On appeal, defendant contends (1) his motion to suppress the evidence should have been granted; (2) his conviction "rests on a statement elicited from him by the police without informing him of his right to counsel or his right to remain silent and thus in violation of his Sixth Amendment rights"; and (3) the evidence failed to prove him guilty beyond reasonable doubt.

On July 29, 1964, a search warrant was issued for the search of the person of ZaZa Doe, M/C, Age 31 or 32, dark complexion and living in apartment 309, 6128 South Woodlawn Avenue, Chicago. The police officers proceeded to 6128 South Woodlawn and forced their way into apartment 309, where they found a woman known as Zelma. They searched the apartment and found a package containing narcotics. While two of the officers remained in the apartment, Officer Parker went down to the lobby of the building, and after approximately fifteen minutes, defendant arrived. After a conversation with Officer Parker, they proceeded to apartment 309.

Officer Parker testified that when he and the defendant arrived in apartment 309, they found his two partners and "a woman known to me as Zelma, who also identified herself as the wife of the defendant. . . . Upon arriving at the apartment I was notified by my partner, Detective Nance, that a tinfoil package had been recovered. A close examination of the tinfoil package revealed six smaller tinfoil wrapped packages containing white powder. At that time in reference to the six tinfoil wrapped packages containing white powder I confronted the defendant with them. In addition, I handed him the search warrant which indicated he was selling narcotics from this apartment. I asked him with reference to the six packages, what did he know of them. At that time he stated the six packages were his, he had them for his own personal use, and also for the use of his wife."

Officer Parker further testified that later that day in the squad room of the Narcotics Section at 1121 State Street, he had another conversation with defendant— "I again confronted the defendant with the six afore-described six tinfoil packages and asked him with regard to them whose were they. At that time he stated the stuff was his and he had it for his own personal use."

Officer Willis Nance testified that on July 29, 1964, he and Officers Parker and Williams gained entrance to apartment 309, 6128 Woodlawn Avenue, after identifying themselves to the lady inside. They searched the apartment after showing a copy of a warrant and found six tinfoil packages wrapped in a rubber band. Nance further testified that he was present about fifteen minutes later, when Officer Parker questioned defendant. "Mr. Parker asked Mr. Foster whose drugs, whose tinfoil packages they were, and he stated that they were his, Mr. Foster did, for him and his wife's personal use, sir." Later in the day, Nance was present at the conversation between Officer Parker and defendant. "Detective Parker asked Mr. Foster again was the tinfoil packages his. Mr. Foster admitted all along, from the time that we entered the apartment, that they were his and his wife's, sir."

The six tinfoil packages were received in evidence, and it was stipulated that they contained heroin.

Defendant testified that prior to July 29, 1964, he resided at 6126 Woodlawn, an apartment building. He and Zelma occupied an apartment that consisted of a room and a half. Zelma paid the rent "the majority of the time." They had the use and occupation of the apartment together, and Zelma had a key. Defendant usually left the apartment early in the morning. He was not in the apartment on the night of July 28. He returned to the apartment at about 2:30 in the afternoon of July 29. At that time, he did not have any narcotic drugs. Zelma was a narcotics addict, but defendant was not—he had

been in 1962. The narcotic drugs found in the apartment did not belong to him, and to the question, "Did you have knowledge of their presence in your apartment?" he replied, "No, I didn't." Defendant and Zelma shared the apartment equally, and she had as much use and control over it as he did. Defendant stated, "We helped one another. She shared most of the expenses. . . . Well, she is a hustler, a prostitute."

Defendant denied that he told Officer Parker that the narcotics were his and his wife's.

After both sides rested, the trial court reviewed the testimony and remarked, "Well, the Court has listened to this case very attentively. There isn't any question in the Court's mind about their complete constructive possession. Here is a man who lived with Zelma four months in Apartment 309. Well, it is more of a self-serving declaration that he said he was not there on the 29th, but he was there the day before, the 28th, and that he had lived with her for four months. When the police officers went to the apartment and they went there with a search warrant, and when the defendant was questioned in the presence of Zelma, when Zelma was available, the defendant at that time said these six tinfoils which later on proved to be heroin, belonged to him. . . . I say that under the evidence offered here that the defendant has been proved guilty beyond a reasonable doubt and the Court so finds the defendant guilty of possession of narcotics as charged in the indictment."

Defendant was not eligible for probation. The court, on the recommendation of the State, sentenced defendant to a minimum term.

Defendant's first contention is that his motion to suppress the evidence and quash the search warrant should have been granted on the grounds that the warrant was defective, since defendant testified that he lived at 6126 rather than 6128 Woodlawn and, also, since the warrant was returned "not executed." Cited in support is People

v. Martens, 338 Ill 170, 170 NE 275 (1930), where it is said (p 171):

> "It is not a debatable question in this State that a search warrant must contain a description of the premises to be searched so specific and accurate as to avoid any unreasonable or unauthorized invasion of the right of security, and that it must identify the premises to be searched, in such manner as to leave the officer in no doubt, and no discretion must be left him, as to the premises to be searched, and that any evidence obtained under an unreasonable and unlawful search and seizure is not competent."

As to this contention, the State argues that the search was proper. Cited in support is People v. Watson, 26 Ill2d 203, 186 NE2d 326 (1962), where the court said (pp 205, 206):

> "Constitutional requirements relating to searches are satisfied in these cases if the warrant describes the premises to be searched with reasonable certainty, and a technical description is unnecessary. . . . A warrant is sufficiently descriptive if it enables the officer, with reasonable effort, to identify the place."

■ We believe the motion to suppress was properly denied. Although defendant did testify that he lived in apartment 309 at 6126, he also testified that he lived with Zelma, who was found in apartment 309 at 6128. Both police officers testified that they went to 6128, the warrant address, where they found Zelma and the narcotics. This was the same apartment to which defendant testified that he was taken and searched. "I was taken up to my apartment and I was searched. Wasn't nothing found in my presence. Was another officer up there in the apartment with my wife, I mean

█

my common law girl friend, and the house had been searched and everything, the door had been broken in. . . . The night latch and thing had been broken off." As to defendant's contention that the warrant is void, since it was returned marked "not executed," the failure of the police officers to make a proper return of the warrant does not render void either the search warrant or the search made under its authority. People v. York, 29 Ill2d 68, 193 NE2d 773 (1963).

Defendant's next contention is that his constitutional rights were violated, since he was not informed that he had a right to remain silent and to have counsel when he admitted ownership of the narcotics. Authorities cited include Escobedo v. Illinois, 378 US 478 (1964).

The State admits that at the time defendant made the two statements testified to by the police officers, "defendant was not apprised of his right to remain silent or his right to counsel." Both statements were received in evidence without objection. We believe the pronouncements made in People v. Hartgraves, 31 Ill2d 375, 202 NE2d 33 (1964), are pertinent here. The court said (p 380):

> "In the present case the trial court considered testimony of the failure to warn the accused, and there is no evidence that defendant requested the assistance of counsel. Under all the facts and circumstances of this case, we hold that the failure to warn the accused did not compel a rejection of the confession. . . .
>
> "We do not, however, read the Escobedo case as requiring the rejection of a voluntary confession because the State did not affirmatively caution the accused of his right to have an attorney and his right to remain silent before his admissions of guilt."

In People v. Kees, 32 Ill2d 299, 205 NE2d 729 (1965), the court stated (p 302):

343

"This court, however, in People v. Hartgraves, 31 Ill2d 375, has aligned itself with those courts which have construed Escobedo to be limited to the peculiar facts of the case, and have rejected it as promulgating the sweeping rule that a confession may not be received if made by an accused without counsel, or unless the right to counsel has been intelligently waived."

■ In the instant case, defendant's first statement that the narcotics belonged to him was made to the police officers immediately after the narcotics were found. Defendant repeated this statement at the police station. No claim is made either that any force or coercion was used in eliciting these statements, or that he made any request for assistance of counsel. Under such circumstances, it was not error to receive these statements in evidence at the trial.

Defendant further contends that "the evidence properly received in evidence totally fails to prove beyond all reasonable doubt that defendant possessed the narcotics." Defendant argues that "there is not one iota of evidence which demonstrates that said items were jointly possessed by defendant and his girl friend." However, this contention is based on the argument previously rejected, that defendant's alleged admissions should not have been received in evidence. Both police officers testified that defendant admitted to ownership of the narcotics, and defendant's denial at trial that he made such statements raises a question only of credibility, which the court resolved against defendant.

■ In a bench trial in a criminal case, a reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory or implausible as to justify a reasonable doubt as to a defendant's guilt.

People v. Woods, 26 Ill2d 582, 585, 187 NE2d 692 (1963); People v. Boney, 28 Ill2d 505, 510, 192 NE 2d 920 (1963).

■ In applying that rule to the proof in the instant case, we find there was sufficient proof of the offense beyond a reasonable doubt. Therefore, the judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Affirmed.

KLUCZYNSKI, P. J. and BURMAN, J., concur.