People of the State of Illinois, Plaintiff-Appellee, v. Robert Guyton, Defendant-Appellant.

Gen. No. 52,860.

First District, First Division.

September 15, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Herbert Becker, Norman W. Fishman, and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Morton E. Friedman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

In a bench trial defendant was found guilty of the offense of armed robbery in violation of chapter 38, section 18–2, of the Ill Rev Stats 1965. He was sentenced to

the penitentiary for a term of three years to three years and one day. On appeal defendant contends (1) that the trial court erred in accepting his jury waiver, and (2) that he was not proved guilty beyond a reasonable doubt.

During the early hours of February 4, 1967, at about 2:00 a. m., William Gooden, while driving a Checker taxicab, picked up defendant as a passenger at 38th and State Street, Chicago. Defendant asked to be taken to 37th and Michigan and back again. When they arrived at 37th and Michigan, and after having conversed for awhile, defendant announced, "This is a stickup," and placed a gun at Gooden's back. Gooden immediately reported the robbery and, at about 2:30 a. m. in the police station at 48th and Wabash Avenue, he gave a statement of the robbery to the police, which included a description of the assailant, his clothing, and that he was about thirty years old. At a police station showup on the evening of February 4, 1967, Gooden identified defendant as his assailant. Gooden's testimony included the details of the robbery and the showup. He identified defendant in open court and also stated that a gun shown him was similar to the one used by defendant in the robbery.

As to the showup, Gooden testified that a police officer called him and said they had arrested the man who had held him up and wanted him to come to the station to identify him. The showup consisted of five Negro men, all about the same height. When Gooden walked into the showup room, the five men were facing a wall with their backs toward him. Later they all turned around facing him, and Gooden recognized defendant in the lineup. The men were not of the same age—four appearing to be about twenty years of age while the defendant appeared to be about thirty; nor were the other men of the same skin color as defendant. Gooden also stated that the clothing on defendant at the showup was the same he had seen on defendant in the cab.

Police Officer George J. Linzy testified as to his arrest of defendant on February 4, 1967. He described defendant's clothing and identified People's Exhibit 1 as a revolver found on defendant. He stated a showup, consisting of five Negro men, was conducted at a police station on Sunday at about 6:30 in the evening. Gooden identified defendant as his assailant by placing his hand on defendant's shoulder.

Police Officer Ralph Gibbon, who was assigned to make an investigation of the complaint, testified that he notified six different victims, including Gooden, to attend the showup. He told Gooden that "we wanted him to attend a showup and possibly make an identification of the person who had robbed him."

Defendant testified and denied the robbery. At 2:30 a. m. on February 4, he was home in bed and asleep. On the evening of the 4th he was arrested at about 10:30 p. m. by two police officers as he was going into a barbecue place with two friends. He was searched and a gun was found on him which he had had since 1965.

A State rebuttal witness, William Tucker, testified that he was a cab driver. On February 4, 1967, he picked up defendant about 10:30 in the evening at 43rd and Ellis and drove him to 37th and Indiana. The defendant then produced a gun and robbed Tucker of his money. Tucker found a squad car, and a search led to the arrest of the defendant at 37th and Indiana, and defendant was then arrested. Tucker identified defendant in court.

Considered first is defendant's contention that he did not understandingly waive his right to a jury trial in open court. At the trial defendant was represented by Mr. John Van Zeyl, an assistant public defender. The report of proceedings shows that when the case was called for trial, the following took place:

The Clerk: "Robert Guyton."

398

Mr. Van Zeyl: "Let the record show on behalf of Robert Guyton I am tendering to the Court a jury waiver which has been signed by the Defendant."

Mr. Motherway: "That's for which indictment?"

Mr. Van Zeyl: "67–1351, I believe it is."

The Court: "That's the one on which we're proceeding. Mr. Guyton, you have heard Mr. Van Zeyl advise me that you wish to waive your right to a jury trial and submit your case to this Court, meaning myself."

The Defendant: "No, I asked for a bench trial all the time."

The Court: "You're waiving a jury trial?"

The Defendant: "I don't want a jury."

The Court: "That means I'm going to try the case. Do you understand that?"

The Defendant: "Yes."

Mr. Van Zeyl: "Do you understand that?"

The Court: "I'm the one that's going to try it, if you waive the jury."

The Defendant: "Yes, that's right."

The Court: "Is that the way you want it?"

The Defendant: "Yes."

The Court: "It is my duty to advise you that under the law you have right to a jury, if you so desire. Do you desire a jury trial?"

The Defendant: "No."

The Court: "Knowing of your legal right to a jury trial, do you now wish to waive your right to a jury trial and have your case tried before me, by me?"

The Defendant: "Yes."

The Court: "You want to submit your case to me alone, without a jury?"

The Defendant: "Without a jury."

The Court: "So indicate that by signing the jury waiver Mr. Van Zeyl handed to you. It has been signed."

Defendant asserts, "It is obvious from the record that he didn't understand what these terms meant and it is impossible to arrive at the conclusion that he understandingly waived his right to a jury trial and was willing to submit his case at a bench trial, the meaning of which was not explained to him and the meaning of which he simply did not know. That he did not understand was amply demonstrated by one question and answer. These were as follows:

"The Court: 'Mr. Guyton, you have heard Mr. Van Zeyl advise me that you wish to waive your right to a jury trial and submit your case to this court, meaning myself.'

"A. 'No, I asked for a bench trial.' "

Defendant's authorities include People v. Wesley, 30 Ill 2d 131, 133, 195 NE2d 708 (1964), where it is said:

"It has long been established that the State and Federal constitutional requirement of a jury trial is not jurisdictional, but is, rather, a privilege which a defendant may waive with the consent of the court, provided the waiver is expressly and understandingly made. . . . Equally well settled is the

400

principle that it is the duty of the trial court to see that the election to forego a jury trial is expressly and understandingly made by an accused. . . . There is no specific or defined formula which the trier of fact is to follow, or from which to judge whether a waiver is understandingly made, and we believe of necessity that the determination must rest upon the facts of each particular case."

Also, Patton v. United States, 281 US 276 (1930), where the court said (p 312):

"Not only must the right of the accused to a trial by a constitutional jury be jealously preserved, but the maintenance of the jury as a fact finding body in criminal cases is of such importance and has such a place in our traditions, that, before any waiver can become effective, the consent of government counsel and the sanction of the court must be had, in addition to the express and intelligent consent of the defendant. And the duty of the trial court in that regard is not to be discharged as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity."

 We agree that the trial court has the duty to see that an accused person's election to waive a jury trial is not only expressly but also understandingly made, and the performance of that duty cannot be perfunctorily discharged. If the jury waiver here was not understandingly made, this record does not demonstrate it. We are not persuaded that the defendant was confused or that he did not know what it was all about. The jury waiver was tendered to the court by defendant's coun-

sel, and the colloquy which followed definitely shows that defendant knew he had a right to a jury trial, which he desired to waive and to have his case tried by the court without a jury. Also, the trial court was entitled to rely on the professional responsibility of defendant's attorney that when he tendered to the court defendant's jury waiver, it was knowingly and understandingly executed by his client. Defendant is not permitted to claim an alleged error which was invited by his behavior and that of his attorney. (People v. Novotny, 41 Ill2d 401, 408–9, 244 NE2d 182 (1968) ; People v. King, 30 Ill App2d 264, 268, 174 NE2d 213 (1961).) We find that defendant's election to waive a jury trial was expressly and understandingly made by the defendant.

■ Considered next is defendant's contention that his identification by Gooden was vague, uncertain and unsatisfactory in that Gooden "never once obtained a good clear view of the defendant's face" because most of his opportunities for observation of the defendant were from the rear, and "everything leads to the conclusion that Gooden never got a good view of the man who robbed him." Defendant also contends that the "lineup proceedings were irregular and improper and that evidence by police officers was admitted although it should not have been, and wrongful suggestions were made by the police to Mr. Gooden in regard to the defendant's appearance at a lineup."

The testimony of Gooden as to the details of the robbery showed that he paid particular attention to the defendant when the defendant first entered his cab, and he was able to describe defendant's hat and clothing in that at the showup defendant had on the same clothing. Gooden also related several occasions on which he observed the defendant while receiving directional instructions from defendant. Finally, at one time the interior lights

402

of the cab were on for about thirty seconds, and Gooden looked around and observed defendant pulling a gun.

█ In our opinion the record shows that the identification by the victim Gooden of defendant as his assailant on February 4, 1967, was positive, clear and convincing. Gooden had ample opportunity to observe the robber, and he was unshaken on cross-examination. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony . is contradicted by the accused. People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694 (1964).

█ Next considered is defendant's contention that the showup at the police station was improper and highly prejudicial to defendant. Although the witnesses differed as to the date the lineup was held and its makeup, we are not persuaded that the showup was improperly conducted or that the notice to appear given to Gooden was prejudicial. If the lineup procedure followed here can be found wanting, we find no prejudice to the defendant. The "in-court identification" of defendant by Gooden was positive and based upon his personal observation of the defendant while the robbery was in progress, and it was not tainted by the lineup procedure. See People v. Dial, 95 Ill App2d 345, 356-7, 238 NE2d 122 (1968). We conclude that the identification evidence here was sufficient to support defendant's conviction beyond all reasonable doubt.

Next considered is defendant's contention that it was improper to permit the State's rebuttal witness Tucker to testify as to another and different crime because defendant had testified as to his whereabouts on the evening of February 4. The defendant argues, "Tucker's testimony in no way corroborated the alleged holdup by the defendant of Gooden, nor did it in any way prove that Gooden's identification of the defendant was valid. It was merely to impeach the statements by the de-

403

fendant as to his whereabouts at the time of the Tucker holdup."

We agree that a separate and distinct offense cannot be proved in support of a prosecution for another offense. However, "evidence that tends to prove motive or intent, identity, knowledge, absence of mistake or accident, and the like, is admissible although it may also involve proof of a separate and distinct offense by the accused." (People v. Harvey, 12 Ill2d 88, 91, 145 NE2d 88 (1957).) "The test of admissibility of evidence is whether it fairly tends to prove the particular offense charged and any circumstances may be put in evidence which tend to make the proposition at issue either more or less probable. . . . where evidence is relevant and otherwise admissible, it is not to be excluded because it may also have a tendency to prejudice the accused." People v. Galloway, 28 Ill2d 355, 360, 192 NE2d 370 (1963).

The testimony of the rebuttal witness Tucker was relevant here because it did impeach defendant's testimony as to his whereabouts at the time of the Tucker holdup, and it was a circumstance which led to the arrest of the defendant and his identification as the assailant in the instant case. See, also, People v. Brown, 76 Ill App2d 362, 371, 222 NE2d 227 (1966).

In a bench trial in a criminal case, the determination of the credibility of the witnesses and the weight to be given their testimony is committed to the trial judge. A reviewing court, in view of the opportunities of observation available to the trial court, will not disturb a guilty finding unless the proof is so unsatisfactory, improbable or implausible as to justify a reasonable doubt as to a defendant's guilt. (People v. Foster, 72 Ill App2d 337, 344, 219 NE2d 683 (1966).) All of the alleged reasons for rejecting the identification testimony of the victim Gooden were argued at length before the trial judge. From an analysis of the entire record, it is our conclusion that there was substantial evidence suf-

ficient to establish defendant's guilt beyond a reasonable doubt. We find nothing to justify the reversal of defendant's conviction.

For the reasons given, the judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

ADESKO, P. J. and BURMAN, J., concur.