THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. EARNEST SANDERS, Defendant-Appellant.

(No. 54035;

First District—April 19, 1972.

Gerald W. Getty, Public Defender, of Chicago, (James N. Gramenos, Assistant Public Defender, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Robert A. Novelle and Themis N. Karnezis, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Defendant, Earnest Sanders, was charged in an indictment with the offense of armed robbery. A pre-trial motion to suppress the identification testimony of the victim was heard and denied. After a jury trial, the defendant was found guilty of robbery in violation of Chapter 38, Section 18—1, Illinois Revised Statutes (1967) and sentenced to not less than four nor more than ten years in the penitentiary.

On appeal, he contends that (1) the identification procedures used were so impermissibly suggestive as to lead to mistaken identification; (2) the show-up process violated defendant's right to counsel under the Sixth Amendment; (3) the prosecution violated the defendant's rights under the Fifth Amendment and the Illinois Revised Statutes of 1967 in introducing an oral statement which the police attributed to the defendant; (4) the prosecutor was allowed over objections to introduce evidence of oral statements attributed to the defendant during the show-up procedure; (5) the trial court erred in denying the defense counsel's request to call a police officer as a witness; and (6) the State failed to prove defendant guilty beyond a reasonable doubt.

On August 1, 1968, at about 11:00 P.M., a passenger entered a yellow cab driven by Paul Gamble at 79th and Halsted. Gamble testified that he looked at the passenger's face for two or three seconds as he inquired where he wanted to go. He was informed the address was 340 West 60th Place. He observed that the passenger had a scar on his left cheek which was about two and one-half inches long and about one-half inch wide. Gamble stated that the lighting conditions at the intersection were very good. The witness said he had been a cab driver for 20 years and had

been robbed several times. He noted that the destination given to him was in a neighborhood where many cab robberies had occurred so he studied his passenger more closely. He looked at the defendant five or six times through the rear view mirror as they progressed because he was apprehensive. The lighting conditions on the streets were good. When they got to the destination, the passenger told him to proceed to 440 instead of 340 West 60th Place. There he pressed a hard object to his back and said, "Give it all to me before I shoot." Gamble gave him his money and when the passenger got out he turned and again looked at his face. Gamble then called the police and upon their arrival told them what had happened and described the robber to be about 25, 5'8", 150 lbs., coffee brown complexion, with a scar on his left cheek.

On cross-examination, Gamble testified that on August 3, 1968, he was called to the Police Station by Detective Hampton to identify his attacker. Detective Hampton said something to the effect of "We think we've got your man." The defendant was seated, handcuffed, and was asked a number of routine questions. From the moment he walked in the door, Gamble's attention focused on the defendant. On re-direct, Gamble testified that the recognition was complete when defendant stood up and Gamble saw the scar on his face. He also stated that when asked where he lived, Sanders gave an address at 79th and Halsted, one at 340 60th Street and another on 60th Place.

Detective Ivory Hampton testified that on August 3, 1968, he went to 340 West 61st Street. He asked a group of men sitting on the back porch whether they had seen Earnest Sanders and one of them said Sanders was not there. The officer looked at him and said, "You're Earnest Sanders," and arrested him. On cross-examination, Hampton stated that he called Gamble and told him "we had a gentleman in the Station and we wanted him to take a look at a suspect." He did not remember whether he indicated a belief that he had the right person. Hampton testified that when Gamble came to the Police Station, only Earnest Sanders was displayed to him for identification purposes.

Mattie Ware, the defendant's sister, was called as a witness for the defense. She testified that the defendant left her home at 1230 West 73rd Place at about 9:00 P.M. He called her after midnight and said he was coming home in a cab and that he didn't have any money. When he arrived, she paid the fare.

The defendant took the stand in his own defense. He stated that he had a scar on his left cheek and one over his eye. At the request of his counsel, he left the stand and exhibited the scars to the jurors. He testified that on August 1st, he left his sister's house at about 10:00 P.M. and went to a Lounge on 63rd Street. He left there at about midnight

and called his sister about cab fare. He said he had never seen Gamble before the day of trial and that he had not seen him at the police station. Sanders denied robbing Gamble. On cross-examination, he said he was arrested on August 7th at 340 West 61st Street. He admitted that when Officer Hampton asked the whereabouts of Earnest Sanders he replied "he was not there." He explained that he did so because he knew Hampton was looking for him. He testified that he was visiting a young lady at that address. Sanders denied telling police officers that he lived at 340 West 61st Street. Officer Hampton was called as a rebuttal witness and testified that when he arrested defendant, he stated his address to be 340 West 61st Street.

■■ The practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned. (*Stovall v. Denno*, 388 U.S. 293, 302; *People v. Gardner*, 35 Ill.2d 564, 572, 221 N.E.2d 232, 236.) However, whether due process has been denied depends upon the totality of the circumstances. (*Stovall v. Denno*, 388 U.S. 293.) *Stovall* requires that "a defendant so claiming must prove that 'the confrontation conducted * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'" *People v. Blumenshine*, 42 Ill.2d 508, 511, 250 N.E.2d 152, 154; *People v. Nelson*, 40 Ill.2d 146, 150, 238 N.E.2d 378, 381.

■■ We agree that there was no need for the police in the instant case to resort to a show-up procedure when the defendant was available for a fair lineup. Also to be condemned is the conduct of the police in informing a robbery victim that they think they have the robber before the victim is given an opportunity to view the suspect.

■■ Even if we were to determine that the pre-trial confrontation was grossly suggestive, however, the in-court testimony of the identifying witness would still be admissible so long as the record clearly revealed that the witness' prior observation of defendant was sufficient to serve as an independent basis for his in-court identification. (*People v. Cook*, 113 Ill.App.2d 231, 252 N.E.2d 29. See also *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330; *People v. Bey*, 42 Ill.2d 139, 246 N.E.2d 287.) "If the witness had an adequate opportunity to observe, and there is little likelihood that the procedures used led to a mistaken identification, the conviction based on a subsequent in-court identification will not be set aside." *People v. Fox*, 48 Ill.2d 239, 246, 269 N.E.2d 720, 725. See also *United States v. Wade*, 388 U.S. 218; *Gilbert v. California*, 388 U.S. 263.

■■ In the instant case, the victim testified that he had previously been robbed on several occasions and that he was suspicious of the defendant when he directed him to go to an address which was in a vicinity where

holdups had occurred. He intentionally carefully viewed him face to face. He particularly noticed the distinguishing characteristic of a large scar on his left cheek. The victim also testified that the lighting conditions under which he viewed the defendant were good. He purposely observed him through the rear view mirror at every opportunity. He also watched him after the robbery as he left the cab. Following the robbery, Gamble gave the police a description of the robber.

Based on all these circumstances, we conclude that the witness had an adequate opportunity to observe the defendant and that his positive in-court identification was based upon this independent origin and free from the taint of any suggestive pre-trial show-up.

■■ Defendant's contention that he had a right to counsel at the show-up is also without merit. *United States v. Wade,* 388 U.S. 218, and *Gilbert v. California,* 388 U.S. 263, involved proceedings in which the defendant was placed in a lineup after he had been indicted. The Supreme Court held that a lineup is a critical stage of criminal prosecution and that a defendant is therefore entitled to the presence of counsel at such a proceeding. In *People v. Palmer,* 41 Ill.2d 571, 244 N.E.2d 173, the Illinois Supreme Court ruled that *Wade* and *Gilbert* apply only to post-indictment confrontations. Since the show-up in the instant case took place immediately following defendant's arrest and prior to his indictment, his right to counsel was not violated.

■■ We reject defendant's contention that his rights under the Fifth Amendment and under Chapter 38, Section 114—11 of the Illinois Revised Statutes of 1967 were violated by the introduction into evidence of an oral statement which the police attributed to the defendant. This argument stems from the arresting officer's testimony that the defendant when first approached denied his identity. *Miranda v. Arizona,* 384 U.S. 436, however, applies only to statements obtained from custodial interrogation. Defendant was clearly not in custody at the time he made the statement.

■■ We also reject the claim that the trial court erred in allowing the prosecution to introduce statements made by defendant during the show-up which placed his address near the location of the crime. The record reveals that it was the defense counsel who first questioned the victim during cross-examination as to statements made by the defendant at the show-up. He opened the door for re-direct examination on the subject. (*People v. Munday,* 280 Ill. 32, 59, 117 N.E. 286.) Moreover, *Miranda* has never been applied to preclude rountine investigatory questions such as a suspect's name or address.

■■ Nor did the court err in not allowing the defense to call Detective Hampton as a witness. This was an attempt to question the

officer as to whether he knew Sanders before he made the arrest and whether or not he knew what Sanders' address was before he made the arrest. The defense counsel had previously completed his cross-examination of Hampton. The State pointed out to the trial judge that this specific interrogation would open the door to evidence of another offense committed by the defendant. In the absence of a clear abuse, a reviewing court should not disturb the trial court's exercise of discretion with respect to the recalling of a witness. (*Illinois Law and Practice*, Appeal and Error, Section 758.) We perceive no abuse of discretion. Nor from our review of the record can we see how the defendant could possibly have been prejudiced by the trial judge's refusal to allow Detective Hampton to be recalled as a defense witness.

■■■■ Finally, defendant contends that the State failed to prove him guilty beyond a reasonable doubt. We cannot agree. The jury was not obligated to believe the alibi testimony of the defendant over the positive identification testimony of the complaining witness when the latter had ample opportunity to observe the defendant. (*People v. Mays*, 48 Ill.2d 164, 269 N.E.2d 281.) It is well established that we will not disturb the findings of the trier of fact unless the proof is so unsatisfactory as to justify a reasonable doubt as to defendant's guilt. After a careful examination of the record, we cannot say that the conclusion of the jury was unwarranted.

For the reasons given, the judgment of the Circuit Court is affirmed.

Judgment affirmed.

DIERINGER, P. J., and ADESKO, J., concur.