THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ROLLAND LEWIS, Defendant-Appellant.

First District (5th Division)    No. 79-831

Opinion filed September 5, 1980.—Rehearing denied November 20, 1980.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and John M. Hynes, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court:

After a bench trial, defendant was convicted of armed robbery and sentenced to a term of 7 to 21 years. On appeal, he contends that (1) the trial court erred in failing to ascertain that he knowingly and voluntarily waived his right to a jury trial; (2) the trial court erred in refusing to recall one of the State's witnesses for further cross-examination; (3) he was denied effective assistance of counsel when his attorney failed to impeach the complaining witness with a transcript of his preliminary hearing testimony; and (4) he was not proven guilty beyond a reasonable doubt.

Defendant was charged by indictment with the armed robberies in a tavern of Mitchell Dudek[1] (the owner) and Donna Nichols (a customer). Before commencement of trial, there was a discussion as to the waiver of a jury trial. In this regard, the transcript reveals only that the trial judge made the following statement to defendant, in the presence of his counsel, "Okay, now you are signing the Jury Waiver, let's go." A written jury waiver form signed by defendant appears in the record, and a portion of the common law record entitled "Memorandum of Orders" (commonly referred to as the half-sheet) contains an entry stating that defendant was advised of and waived his right to a trial by jury and that he signed a jury waiver.

At trial, Dudek testified for the State that when he entered his combination restaurant and tavern at about 11 a.m. on the morning of the robberies, there were three men sitting at the bar drinking beer—one at the front of the tavern, one near the middle, and one near the back; that he went into the kitchen, from which he saw that the man at the back of the bar, whom he identified as defendant, had a bag next to him on a stool; that he (Dudek) was 8 to 10 feet away from defendant and looked at him for 15 to 20 minutes because "he didn't look right"; that he saw defendant take a gun out of the bag, as did the other two men, and defendant then announced, "This is a stick-up"; that defendant held his gun to Dudek's head and then tied Dudek's hands and feet behind him and made him lie facedown on the floor; that one of the men also tied up Dudek's wife; that when a customer named Donna Nichols walked into the bar, the man standing watch at the front door led her to the back, where her money was taken from her and she was tied up; that the men were there about 10 minutes; and that, after they left, he found that the money in the kitchen and in the cash register was gone, as were 8 to 10 bottles of whiskey, 4 to 5 cartons of cigarettes, and 500 lottery tickets. He testified also that on December 16, 1974, at the request of police investigator Epplen, he looked at several photographs—from one

---

[1] He is alternatively named Dudet by the parties.

of which he identified defendant. Dudek said that the man sitting at the end of the bar near the door was short and light-skinned, wore a tam and blue jeans, weighed 130 pounds, and was approximately 24 or 25 years old; that he did not pay too much attention to the man in the middle; that he told a policeman who arrived on the scene (Officer Harry Gould) that the man at the back of the bar nearest to the kitchen wore black pants and a black undershirt, was tall and skinny, "had one of those hairdos," weighed approximately 140 pounds, and was 20 to 25 years old; and that while he was tied up he could not see anything because he was facing the floor. Dudek also testified that later someone from the lottery commission called him and gave him the name of defendant as the person who claimed to be a winner out of the group of tickets stolen from him and that he (Dudek) identified that ticket (which was number 1313-76) as one which was taken during the robbery.

Donna Nichols, as a State's witness, testified that she stopped in Dudek's tavern to pick up some lunch; that when she opened the door, a man put a gun to her head and she was led to the back of the bar where, after her money and watch were taken, she was tied up; and that one of the men whom she identified as defendant was standing over Dudek and pointing a gun at him. Nichols testified also that Investigator Epplen later showed her a group of eight or nine photographs which she examined twice to make certain before she identified defendant from one of the pictures; and that, subsequently, at a court hearing regarding the case, Investigator Epplen asked her to step out in the hallway to see if she could identify anyone who was involved in the robbery, and there she saw defendant standing in the hallway wearing a dark gray suit, with his hands behind his back. On cross-examination, she answered that during the robbery she "wasn't looking at [the men] that much"; that she told the police that the man who held a gun on Dudek was a male Negro, 5′11″ tall, 22 or 23 years old, weighed 175 pounds, and wore a black tank top and dark pants; and that she was positive of her identification of defendant because she "just can't forget a man with a gun."

Dudek and Nichols completed their testimony on the first day of trial, and the next day defense counsel moved for a one-day continuance to examine some evidence which he said he had no prior knowledge of. The continuance was granted but, apparently having been informed that defense counsel wanted to question Dudek concerning this evidence, the trial court stated that Dudek could testify again if he appeared voluntarily but that a subpoena would not be enforced.

On the following day, the State rested its case, and defendant first called Officer Harry Gould, of the Chicago police department, who testified that on August 29 he responded to a call at Dudek's tavern, where he was told that three men had just robbed the establishment; that he was given descriptions of these men (although he could not remember who

provided the descriptions); that one was described as a male Negro, 22 to 24 years of age, 5'11" tall, 175 pounds, black hair, brown eyes, dark complexion, and wearing a white bandanna and a gold earring; that a second man was described as a male Negro, 22 to 24 years old, 5'4" tall, 130 pounds, black hair, brown eyes, dark complexion, and wearing an undershirt and a goatee; and that a third man was described as a male Negro, 22 to 24 years old, 5'4" tall, 130 pounds, black hair, brown eyes, light complexion with blotches on his face, and wearing a red and white shirt.

When Gould's testimony was completed, defense counsel stated to the court, "I tried to get Mr. Dudek, but I wasn't able to do so." He followed this statement with an offer of proof as to certain preliminary hearing testimony concerning which he wanted to question Dudek.

Defendant then testified that at the time of the robbery, he was at a party in the apartment of an individual named Charlotte Robinson; that he bought the winning lottery ticket for a dollar, at the party, from a man named "Blue"; that he (defendant) has since been unable to locate anyone who was at the party and "Blue" has passed away; that Charlotte Robinson no longer lived in that apartment; that when he (defendant) discovered it was a winning ticket, he redeemed it by filling out a lottery form, using his correct name and address; and that when Nichols saw him in the corridor of the courthouse, he was in leg irons and chains with his hands cuffed in front of him. The State then introduced evidence that after a 1972 robbery conviction, he was given probation which was revoked in February of 1972 with a sentence of 2 to 7 years imposed.

Opinion

Defendant first contends that plain error occurred when the trial court failed to ascertain in open court that he knowingly and voluntarily waived his right to a trial by jury.

Section 103—6 of the Code of Criminal Procedure (Ill. Rev. Stat. 1977, ch. 38, par. 103—6) provides that every person shall have a right of trial by jury unless understandably waived by defendant in open court.

There is no specific formula, however, for determining whether a defendant's waiver of his right to a jury trial is understandably made (*People v. Palmer* (1963), 27 Ill. 2d 311, 189 N.E.2d 265; *People v. Jackson* (1975), 28 Ill. App. 3d 208, 328 N.E.2d 98), and the decision in that regard rests upon the particular facts and circumstances of each case as disclosed by the record as a whole (*People v. Richardson* (1965), 32 Ill. 2d 497, 207 N.E.2d 453; *People v. Wesley* (1964), 30 Ill. 2d 131, 195 N.E.2d 708).

In the instant case, the record contains a printed form signed by defendant, waiving a jury trial, and a portion of the common law record entitled "Memorandum of Orders" (commonly referred to as the half-sheet) contains an entry dated May 1, 1978, which states:

"Hearing of Defts Mot to quash arrest, suppress evid. Testimony hrd, args had. Mot denied. Deft. advised of Rt. to trial by jry. Waives jry trial. Sgns jry waiver. Opning stmts had. Test hrd. Cs commncd & cont Mot denied. Deft. advised of Rt. to trial by jry. Waives 5-2-78."

There was no objection, of course, to the case proceeding as a bench trial.

We recognize that a signed jury waiver in itself is insufficient to show the relinquishment of a defendant's right to a jury trial (*People v. Losacano* (1975), 29 Ill. App. 3d 103, 329 N.E.2d 835; *People v. Clay* (1974), 19 Ill. App. 3d 296, 311 N.E.2d 384); however, it has been held that where the common law record reflects a waiver, it is presumed to be correct (*People v. Gentry* (1977), 48 Ill. App. 3d 900, 363 N.E.2d 146) unless other facts appearing in the report of proceedings are contradictory—in which case the court must consider the matter upon the record in its entirety (*People v. Williams* (1963), 27 Ill. 2d 327, 189 N.E.2d 314).

In the instant case, we view the half-sheet entry as stating that on May 1, 1978, there was a hearing at which evidence was taken on defendant's motion to quash and suppress; that the motion was denied; that immediately thereafter, defendant was advised of his right to trial by jury; that the court was informed that defendant waived this right; that defendant signed a jury waiver; that without any further delay, opening statements were made and testimony heard; and that all of this occurred on May 1, 1978. In addition, the report of proceedings shows that on the same day after defendant's motion to quash and suppress was denied, the court made the statement "Okay, now you are signing the Jury Waiver, let's go," and that opening statements were then made. Thus, it is obvious that both defendant and his attorney were present on May 1, 1978, when defendant was advised of his right to a jury trial, and that the waiver (whether made by counsel or defendant) was, in fact, made in their presence, and it appears that the jury waiver was signed by defendant in the presence of his attorney.

■■ While the record could have shown more clearly, through specific questions by the court, that defendant's waiver of a jury trial was understandably made, we believe that, taken as a whole, the record adequately establishes a waiver of defendant's right to a jury trial. See *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762; *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397; *People v. Middleton* (1976), 43 Ill. App. 3d 1030, 357 N.E.2d 1238; *People v. Sheppard* (1974), 20 Ill. App. 3d 1036, 313 N.E.2d 287.

■■ In support of his position, defendant cites *People v. Murff* (1979), 69 Ill. App. 3d 560, 387 N.E.2d 920; *People v. Miller* (1977), 55 Ill. App. 3d 1047, 371 N.E.2d 917; *People v. Losacano* (1975), 29 Ill. App. 3d 103, 329 N.E.2d 835; *People v. Clay* (1974), 19 Ill. App. 3d 296, 311 N.E.2d 384; and

*People v. Rambo* (1970), 123 Ill. App. 2d 299, 260 N.E.2d 119. However, we find them to be distinguishable in that they contained significantly weaker indications of an effective waiver. Specifically, in all of those cases the court either stated the common law record did not indicate that defendant was advised of his right to a jury trial or did not mention the common law record at all. To the contrary, in the instant case the common law record, which is presumed correct (*Gentry*; *People v. Feather* (1976), 42 Ill. App. 3d 974, 356 N.E.2d 885) contained an entry that he had been so advised and had waived it. Further, it appears that in *Murff* the defendant was a paranoid schizophrenic, and that the defendant in *Rambo* was only 16 years old. In each of those cases, the court noted that these special circumstances should have prompted the trial court to probe deeper into the waiver issue. In the case at bar, however, no such special circumstances exist.

Defendant next contends that he was denied a fair trial when the trial judge refused to compel the return of Dudek for further cross-examination by defense counsel. The record discloses that Dudek and Nichols had completed their testimony and had left the building when defense counsel asked for a continuance until the next day because "I have some additional evidence which I would like to peruse at this hearing which was not available to me before yesterday, knowledge of it was not available to me until yesterday." Apparently, the court was informed that this additional evidence concerned Dudek because, in granting the continuance, the court stated:

> "I don't know if you are going to serve [Dudek] or not serve him \* \* \* but I am not going to enforce any subpoena on him. If he can come of his own volition, that is fine. He was here all day yesterday or most of the time \* \* \*. The man said something about his wife being [ill] or something."

It is established that permission to recall a witness for further cross-examination is within the sound discretion of the trial court (*People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052; *People v. Brown* (1976), 41 Ill. App. 3d 641, 354 N.E.2d 602) and, in the absence of a clear abuse, a reviewing court should not disturb the trial court's exercise of discretion in that regard (*People v. Sanders* (1972), 5 Ill. App. 3d 89, 282 N.E.2d 742).

■■ In the instant case, we note that a preliminary hearing transcript was available to defendant. A copy was marked by the State for identification during its examination of Dudek to refresh his recollection as to the date of the hearing. Defense counsel, however, asked no questions of Dudek concerning his preliminary hearing testimony. Furthermore, defense counsel did not inform the court prior to its ruling that it would not enforce a

subpoena as to the testimony which would have been the basis of his need for additional cross-examination. Under the circumstances, we believe it clear that the trial court did not abuse its discretion in so ruling.

Further, we note that while defendant subsequently made an offer of proof, he did not make any showing as to what effort he made to bring Dudek back so that, even if there had been a renewed request to compel his return (which the record does not disclose), its denial would not have been an abuse of discretion. In any event, the offer of proof concerned only a variance as to where defendant was seated at the bar and would have gone only to Dudek's credibility. However, in view of the other significant identification testimony, we attach no particular significance to this apparent discrepancy and, considering the fact that defendant could have brought it to the attention of the jury while Dudek was on the stand, he cannot now complain that he was prejudiced because the court did not compel the reappearance of Dudek so that he could do so. We conclude that defendant was not denied a fair trial by this refusal.

■■ Defendant alternatively argues that he was denied effective assistance of counsel. We note that in *People v. Murphy* (1978), 72 Ill. 2d 421, 436, 381 N.E.2d 677, 685, the supreme court stated:

> "A strict test is applied in determining whether privately retained counsel is incompetent:
>
>> 'In such a case the court will not reverse a conviction because of the incompetency of counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham.' [Citations.]"

To support his incompetence argument here, defendant cites only the failure to cross-examine Dudek concerning his preliminary hearing testimony. We found above, however, that this testimony was not particularly significant, and we note that trial counsel's competence is demonstrated throughout the record which reveals that he presented and capably argued a motion to suppress; that he otherwise competently cross-examined the State's witnesses; that he moved for a finding of not guilty at the close of the State's case; that he delivered a professionally commendable closing argument; and that he vigorously argued on defendant's behalf during the aggravation and mitigation hearing.

Defendant cites *People v. Jackson* (1968), 96 Ill. App. 2d 99, 238 N.E.2d 234, in which he asserts that a conviction was reversed for incompetence of counsel, who failed to obtain a copy of the preliminary hearing transcript. We note, however, that in *Jackson,* the trial attorney made numerous other mistakes, and it was on the basis of the totality of his conduct that reversal was required. Such is not the case here, and we

conclude that defendant was not denied effective assistance of counsel.[2]

Defendant's final contention is that he was not proven guilty beyond a reasonable doubt. Initially, we note that all of the arguments raised in support of this contention deal with the credibility of the witnesses, concerning which it was said in *People v. Tillis* (1976), 40 Ill. App. 3d 66, 68-69, 351 N.E.2d 332, 334, that:

"In a bench trial, the determination of the credibility of witnesses and the weight to be given their testimony are matters for the trial judge. A reviewing court will not substitute its judgment unless the proof is so unsatisfactory, improbable, or implausible as to justify a reasonable doubt as to defendant's guilt. (*People v. Guyton* (1969), 114 Ill. App. 2d 394, 404, 252 N.E.2d 665; *People v. Foster* (1966), 72 Ill. App. 2d 337, 344, 219 N.E.2d 683.)"

Also see *People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649; *People v. Powell* (1978), 72 Ill. 2d 50, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S. Ct. 1214.

With that reasoning in mind, we turn to defendant's specific arguments. He first attacks the identification of Donna Nichols by pointing to her testimony that she was excited during the robbery; that she did not get a good look at the men; and that she went through the police photographs twice to make certain of her identification. We do not believe, however, that this testimony reflects adversely on her identification. Certainly it is not likely that she would remain calm during an armed robbery and, although her opportunity to observe defendant may have been somewhat limited, she was certain of his identification and said that she could not forget a man with a gun. Also, the fact that she looked through the photographs twice implies conscientiousness as much as it does uncertainty. Second, defendant faults her identification in that she described defendant as being 5'11" tall, 175 pounds, and 20 to 23 years of age; whereas, certain documents in the record indicate that he was over 30 years old at the time of the incident. However, while defendant did not testify as to his age, the presentence report states that he was 25 years old and, in any event, we see this discrepancy as being insignificant—particularly in view of the accuracy of the remainder of her description which defendant does not challenge. Third, defendant argues that the unnecessarily suggestive manner in which defendant was exhibited to her in the hallway outside the court-

---

[2] We note that our conclusion would be the same were we to apply the two-pronged test enunciated in *People v. Morris* (1954), 3 Ill. 2d 437, 439, 121 N.E.2d 810, 817, where the court stated that to establish incompetency of court-appointed counsel, defendant must show "(1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." See also *People v. Edmonds* (1979), 79 Ill. App. 3d 33, 398 N.E.2d 230.

room, when viewed in the light of the initial limited opportunity she had to observe the assailants, casts doubt on the validity of her identification of defendant. While it is true that her observation was somewhat limited, we note her testimony that she saw defendant pointing a gun at Dudek and that she was looking at him when he told her to leave her money on the pool table and threatened to blow her head off if she said anything. It is our belief that she had sufficient time to view defendant during the occurrence and, in light of the fact that she made positive identifications of defendant from the photographs and also at trial and because the description she gave of defendant was unchallenged except as to age, we consider any suggestiveness resulting from her observation of defendant in the hallway to be insignificant. In the light of the above, we reject defendant's contention that her identification testimony was not credible.

Defendant also finds fault with the credibility of Dudek's identification. He first suggests that it was suspect because of his testimony that during the robbery he was tied up with his face down. It appears to us, however, that Dudek's identification was based upon an adequate observation, as he also testified to observing defendant for 15 to 20 minutes before the robbery because "he didn't look right." Second, defendant argues that Dudek's identification was tainted because he was first told that a man named Lewis had redeemed one of the stolen lottery tickets and his later identification was made from a police photograph having defendant's name on it. We are unable to find merit in this argument, because the photographs shown to defendant are not in the record and because it appears that defendant raised no question at trial to the identification from a photograph bearing his name. Third, it is asserted that Dudek's identification testimony was further suspect because of his description of defendant as being tall and skinny, 140 pounds, and 20 to 25 years of age; whereas, Officer Gould testified that the description given him indicated that defendant was 175 pounds, 5'11" tall, and 20 to 24 years of age, and the arrest report listed defendant as being 5'11" tall, weighing 170 pounds, and being 31 years of age. We find no significant discrepancy in those descriptions. If the defendant was, in fact, 5'11" tall and weighed 170 pounds, he could reasonably be described as "tall and skinny" and, as we noted above, the presentence report indicated that defendant was 25 at the time of the occurrence.

Defendant also argues that certain other State testimony is unconvincing. He first states that it is unreasonable to believe that he would have signed his name to the lottery ticket and redeemed it if he had stolen it. While we agree that such conduct on defendant's part might be considered unusual, we do not believe that it negates the theft of the ticket. Defendant also testified that he paid $1 for the 50-cent ticket at a party in Charlotte Robinson's apartment from a person named "Blue"; that Charlotte Robin-

son no longer lived at that apartment; that "Blue" died some time afterwards; and that he (defendant) has been unable to find anyone else who was at the party. There being no support for his testimony that he purchased the ticket, it was not unreasonable for the trial court to attach little or no significance to the fact that he signed and reclaimed the ticket. Second, defendant points to the testimony of Dudek that he watched defendant for 15 to 20 minutes because "he didn't look right" but did not call the police, and defendant argues that this somehow casts significant doubt on Dudek's credibility. We disagree, as we do not believe it unreasonable for Dudek to have refrained from calling the police on the basis of a mere suspicion about defendant.

■■ We conclude that the trial court's finding, inherent in its judgment, that the State's witnesses were credible, was properly reached. Moreover, in the light of what has been stated above, we are unable to say that the proof was so unsatisfactory, improbable, or implausible as to justify a reasonable doubt of defendant's guilt.

For the reasons stated, the judgment is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.