THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
KEVIN EVANS, Defendant-Appellant.

First District (2nd Division)   No. 1—91—3510

Opinion filed March 2, 1993.

Rita A. Fry, Public Defender, of Chicago (Denise R. Avant, Assistant
Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Linda Woloshin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE SCARIANO delivered the opinion of the court:

Defendant Kevin Evans was arrested on January 31, 1991, and on February 13, 1991, he was indicted for his unlawful possession of a stolen automobile in violation of section 4—103(a)(1) of the Illinois Vehicle Code (Ill. Rev. Stat. 1989, ch. 95½, par. 4—103(a)(1)). On February 1, 1991, while in pretrial detention, he submitted a form by which he made a demand for a jury trial. At some point during the pretrial phase of this action, the State proffered a negotiated plea to defendant's counsel, a public defender, but, apparently, this offer was not conveyed to defendant until he appeared before the trial court on the day of his trial, which had been previously continued five times.

Counsel for defendant informed the court that the State had offered defendant a term of three years in the custody of the Illinois Department of Corrections in exchange for a guilty plea to the crime charged, but that she had not as yet told him of it. Although the trial court initially ordered her to inform defendant of the offer, the judge subsequently assumed the responsibility himself. After the court advised defendant of the offer by the State, it demanded to know immediately if he would accept it, stating that the case would be an easy one to try as the only witness to the incident was already in court. When defendant asked for time to consider the offer, the court replied that he already had been given all the time he would receive.

Defendant responded by stating that he was ready to go to trial, presumably intending to decline the State's offer. From this statement, the trial court found that defendant had waived his right to a jury trial and that the waiver was made knowingly and intelligently. Neither the prosecutor nor defense counsel advised the court of defendant's written jury demand, which presumably was in their files of the case. Consequently, the court proceeded to conduct a bench trial.

After both sides waived opening statements, the State called Chicago police officer Cawley, a foot patrolman, who testified that on January 31, 1991, while directing traffic at the corner of 1130 West Lawrence Avenue, he observed defendant and another African-American male in a 1986 Buick stopped in the eastbound lane of Lawrence Avenue, with defendant in the driver's seat. The vehicle was tagged

with license plates unique to auto dealers and still bore the warranty sticker on a side window. Cawley stated that these factors, combined with the lateness of the day and the fact that it was a holiday,[1] caused him to wonder whether the two occupants of the vehicle were on a test drive or whether the car was stolen.

Accordingly, he instructed defendant to pull to the side of the road in order that Cawley could check the status of the vehicle. At first, defendant appeared to comply with Cawley's instructions, but at the last moment, he fled eastbound on Lawrence. At that point, in response to his query, Cawley received word over his radio that a 1986 Buick with the license number of the one driven by defendant was reported stolen from Allen Jacob Buick on January 27, 1991. Cawley immediately issued a flash message for the apprehension of defendant.

Defendant was ultimately stopped at Wilson Avenue and Sheridan Road, where he was detained and identified by Cawley as being the subject of his earlier flash message. On cross-examination, Cawley admitted that when he originally spotted the vehicle on Lawrence Avenue, the steering column of the Buick was not "peeled back," exposing the inner workings of the column, which is one way of telling that the auto was stolen. Cawley also conceded that, in fact, he saw keys in the ignition.

The parties stipulated that if called to testify, Anthony Anderson, an agent of Allen Jacob Buick, would state that the dealership owned the 1986 Buick found in defendant's possession, that the car was stolen on January 27, 1991, and that no agent of the dealer had authorized anyone, including defendant, to take possession of the auto. After the State rested, defendant moved for a "directed finding," which the trial court denied. The defense then rested, and the court found the defendant guilty of the crime charged.

A presentence investigation report revealed that defendant had two prior convictions. In December 1987, he was convicted of unlawful use of a weapon and sentenced to 24 months' probation, and in December 1988, he was convicted of the manufacture and/or delivery of a controlled substance, namely cocaine, and sentenced to four years in the custody of the Illinois Department of Corrections. Defendant's education extended only to the tenth grade. He was last employed in 1987, when he worked in the fast-food industry. The report also indi-

---

[1]We are not offered any information in the record as to what holiday annually falls on January 31 or what holiday may have been observed on Thursday, January 31, 1991.

cated that defendant, although unmarried, was the father of a three-year-old girl.

At the sentencing hearing, the State, relying on the facts of the case and defendant's prior convictions as factors in aggravation, sought an extended-term sentence. As mitigating factors, defendant pointed to his age (21 years old at the time of the hearing); his employment history (worked for two fast-food restaurants only a few years before); and that he was never convicted of a violent crime.

The court sentenced defendant to an extended term of nine years' imprisonment. It expressly stated that it based its sentencing decision on defendant's prior criminal history. In the process of passing sentence, the court offered defendant suggestions on matters he should ponder while serving his sentence; for instance, that he should decide what to do with his future in view of his lack of education and, more important, he should determine how best to provide for the future of his daughter. After the sentencing hearing, defendant timely filed his notice of appeal.

I

Although defendant raises three issues on appeal, given our resolution of the first one, we need not reach the other two. The main issue is whether defendant made a knowing and intelligent waiver of his right to be tried by a jury. Defendant asserts that because the record contains no affirmative act or statement on his part or that of his counsel which manifested either a relinquishment of the right or even an understanding of the consequences of a waiver (*i.e.*, having a bench trial with the court sitting as the trier of fact), the trial court, by not securing such a waiver on the record, committed reversible error.

The State responds that the failure of the defendant and his counsel to object to the trial court's express finding that defendant waived his right to a jury trial, as well as the defense's tacit acquiescence in the court's subsequent conduct of the trial as a nonjury matter, sufficiently conveyed the message that defendant waived his right to a jury trial. In the State's view, its acquiescence argument is consistent with and, in fact, merely a logical extension of the holding in prior cases that where a defendant's counsel orally waives the right to a jury trial in the defendant's physical presence, the defendant will be deemed to have approved of the waiver and thus to have been bound by it.

## A

We note, without the State's urging the point, that defendant failed to assert the issue of the inadequacy of his jury waiver in his post-trial motion for a new trial, but raises it for the first time on appeal. In *People v. Smith* (1985), 106 Ill. 2d 327, 478 N.E.2d 357, our supreme court implied that the adequacy of a jury waiver would be susceptible to the waiver rule later enunciated in *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124. But, as *Smith* observed: "The waiver rule is one of administrative convenience rather than jurisdiction, however, and we have provided by rule that plain errors affecting substantial rights may be noticed on review though not brought to the trial court's attention [citation]." *Smith*, 106 Ill. 2d at 333, 478 N.E.2d at 360, citing 87 Ill. 2d R. 615(a).

Consequently, while defendant's failure to raise this issue in his motion for a new trial may constitute a waiver of it for the purposes of appeal, invocation of the plain error rule is appropriate here. It has long been noted that "[i]t is solely within the discretion of the reviewing court to consider alleged errors not raised or presented at trial." (*People v. McCullum* (1977), 66 Ill. 2d 306, 315, 362 N.E.2d 307, 311; see also *People v. McAdrian* (1972), 52 Ill. 2d 250, 255, 287 N.E.2d 688, 691.) Under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)), we may address and rectify errors not properly preserved which affect the substantial rights of a defendant. The supreme court has explained that substantial rights are deleteriously affected where either the evidence is "closely balanced" or where the error is of such magnitude that its commission denied the accused a fair trial. *People v. Young* (1989), 128 Ill. 2d 1, 46-47, 538 N.E.2d 453, 471.

Defendant asserts that the trial court, in its anxiety to resolve the case before it, glossed over the fundamental nature of the right and that this would be the type of trial mistake the plain error rule was intended to correct. Moreover, in *People v. Hall* (1991), 221 Ill. App. 3d 864, 583 N.E.2d 54, we recently invoked the plain error rule to review the validity of a jury waiver even though the State argued waiver, because the defendant did not raise the issue in his post-trial motion. Here, in contrast to *Hall*, the State does not rely on or even contend that the issue is waived. The State therefore will not be heard to complain that it will suffer prejudice as a result of our invocation of plain error to review the issue of jury waiver. Accordingly, given this lack of prejudice to the State, the long-recognized importance of trial by jury in our system of government, and the trial court's cursory manner of treating with defendant's right to a jury,

we elect to consider this issue as being within the scope of the plain error doctrine.

## B

In *Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444, the Supreme Court discussed the importance of the right to a trial by jury and it held that because the right was "fundamental to the American scheme of justice," the due process clause of the fourteenth amendment prohibits the imposition of "serious" punishment unless the State has afforded the defendant a trial by jury. (*Duncan*, 391 U.S. at 149, 20 L. Ed. 2d at 496, 88 S. Ct. at 1447.) Subsequently, in *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, the court held that because a plea of guilty waives fundamental rights, including the right to a trial by jury, the acceptance of any such plea will be constitutionally infirm unless the record clearly manifests that the defendant knows and understands the rights he foregoes by his plea. Accordingly, one may reasonably infer that it would be equally invalid to accept the bare waiver of the right to a jury trial, absent a clear manifestation that defendant truly appreciated what he has waived. See *Smith*, 106 Ill. 2d at 339, 478 N.E.2d at 362 (Moran, J., concurring in part, dissenting in part).

The right to trial by jury is guaranteed as well by the Illinois Constitution, which states: "In all criminal prosecutions, the accused shall have the right to *** have a speedy public trial by an impartial jury ***." (Ill. Const. 1970, art. I, §8.) To enforce this State right to a trial by jury as well as its co-existent Federal counterpart, our legislature enacted section 103—6 of the Code of Criminal Procedure,[2] which provides in pertinent part: "Every person accused of an offense shall have the right to a trial by jury unless (i) understandingly waived by defendant in open court." Ill. Rev. Stat. 1991, ch. 38, par. 103—6.

In construing this provision, our supreme court has held that it imposes an obligation on the trial court to ascertain and ensure that the election to forego a trial by jury is made both expressly and with an understanding of the nature of the rights waived. (*Smith*, 106 Ill. 2d at 334, 478 N.E.2d at 360; *People v. Frey* (1984), 103 Ill. 2d 327, 332, 469 N.E.2d 195, 197; *County of McLean v. Kickapoo Creek, Inc.* (1972), 51 Ill. 2d 353, 356, 282 N.E.2d 720, 722; *People v. Clark*

---

[2]Statutory procedures requiring an express waiver of trial by jury in open court, thus ensuring on-the-record proof that the waiver was knowing and intelligent, have been a part of the Illinois Code of Criminal Procedure since 1827. See Rev. Laws 1827, par. 162, §176.

(1964), 30 Ill. 2d 216, 220, 195 N.E.2d 631, 634.) Although the deter-
mination of whether defendant has waived this right with knowledge
and understanding is not formulaic, it nevertheless turns on the facts
and circumstances of each case, as evidenced by its record. *People v.
Tye* (1990), 141 Ill. 2d 1, 24, 565 N.E.2d 931, 942; *Smith*, 106 Ill. 2d
at 334, 478 N.E.2d at 360; *Frey*, 103. Ill. 2d at 332, 469 N.E.2d at
197.

*Smith* provides the analytical method by which we determine
whether a trial court has complied with its duty to ascertain that a
waiver of a jury trial was knowingly and intelligently made. The court
in that case found that where the common law record indicates that
the defendant opts for a bench trial, it gives rise to an inference that
the jury waiver was made with knowledge and understanding of its
implications. It then becomes incumbent on the defendant, the party
alleging it, to establish the error by showing that the common law
record does not correctly reflect what actually transpired. He can ac-
complish this by providing a verbatim transcript of the proceeding, "a
proposed report of the proceedings or an agreed statement of facts."
*Smith*, 106 Ill. 2d at 334, 478 N.E.2d at 361.

In *Smith*, the common law records in both cases[3] incontrovertibly
indicated that the defendants waived a trial by jury. In one case, the
half-sheet contained the stamped legends "TRIAL BY COURT-FIND-
ING OF GUILTY" and "PLEA OF NOT GUILTY JURY WAIVED."
(*Smith*, 106 Ill. 2d at 333, 478 N.E.2d at 360.) In the other case, the
common law record included an entry which stated: "Cause comes for
Bench Trial." (*Smith*, 106 Ill. 2d at 332, 478 N.E.2d at 359.) The
court held that these were sufficient to create an inference of a know-
ing and intelligent waiver of a jury trial by both defendants. It then
became the defendants' obligation to rebut the inference by offering
something which would memorialize when the waiver indicated on the
half-sheet allegedly occurred and which would contradict the common
law record's reflection of waiver. In the absence of an inconsistent
transcript or its suitable substitute, the court presumed the correct-
ness of the common law entry showing waiver and that it was know-
ingly and intelligently made.

■ In the instant case, the common law record fails unequivocally
to give rise to an inference of a valid waiver, as it is self-contradic-
tory. Rather than offering proof of a knowing and intelligent waiver,

---

[3]The case was actually a consolidation of two separate appeals on the validity of
jury waivers. The cases were *People v. Smith*, No. 59851 and *People v. Flowers*, No.
59911.

it could actually be said to provide sufficient evidence that the jury waiver was not even made. On February 1, 1991, defendant made an *express written demand* for a jury trial by filing a demand for trial form and marking the box indicating that a jury was desired. On the other hand, the half-sheet, without making any reference to the withdrawal of the preexisting jury demand, contains an entry which indicates that defendant chose a bench trial, thus arguably waiving his right to a jury and presumably retracting the earlier jury demand.[4] However, in view of the unequivocal nature of the jury demand and the recognized importance of the right to a jury trial, we find the ambiguous entry on the half-sheet insufficient to give rise to a *Smith* inference that defendant withdrew his jury demand or that he subsequently waived the right to a jury.

Furthermore, even assuming the half-sheet entry of July 29, 1991, to be sufficiently clear, the report of proceedings rebuts any inference of waiver that might be gleaned from the half-sheet notations of that day. The transcript shows that the trial court did not attempt to explain to defendant the nature of the rights he would forego, nor did it attempt to ascertain if defendant already knew of them. Instead the court, seemingly on its own motion, found waiver presumably from defendant's silence. The salient portion of the transcript, after the defendant's case was called, reads as follows:

"Ms. Strzalka [Counsel for defendant]: Judge, this is Mr. Evans. This case is set for trial today, Judge. The State's made Mr. Evans an offer which I have not yet had a chance to convey to him due to other matters.

THE COURT: Convey it. The offer is three years. Do you want it or not? The police officer is right in back of you, sitting right there. You know how long it would take to put this case on? Just like that.

All right, now, do you want to play some more games in the system, or you want to dispose of this case right now, or we'll go to trial?

DEFENDANT: Can I get some time to think about it?

---

[4]The half-sheet entry on the date of the trial, July 29, 1991, cryptically reads: "P P c P N G B trial F G P S i ordered Mot for P + D M H d A N S W to Disc Filed O/C 8-29-91." We assume "B trial" indicates a bench trial, manifesting defendant's waiver of a jury trial.

THE COURT: No, you have got all the time that you are going to get to think about it. And you should have thought about it before you got to this point.[5]

DEFENDANT: *I'm ready to go to trial.*

THE COURT: You're ready to go to trial. Have a seat over there. *The Court finds there is an informed and intelligent election on the part of the defendant to waive his right to trial, the right to jury. Accordingly, we'll proceed to bench trial."* (Emphasis added.)

In *Smith*, the court held that a record which does not address the subject of jury waiver sufficiently rebuts the inference raised by a half-sheet entry which states that the defendant waived a trial by jury. Here, the record is not merely silent on jury waiver, but on the contrary, clearly manifests that defendant made no such waiver; he stated only that he was prepared to go to trial. Section 103—6 creates a presumption that where a defendant does not affirmatively act to expressly waive his right to a jury, he must be tried before jury. Thus, the trial court, by inferring waiver from silence, erred in finding that the defendant waived a jury. Accordingly, we are bound to conclude, as did our supreme court in similar circumstances, that "[i]t is apparent from the record, then, that the requirements of an understanding waiver made in open court were not satisfied, and therefore the cause must be remanded for a new trial." *Smith*, 106 Ill. 2d at 337, 478 N.E.2d at 362, citing *Kickapoo Creek, Inc.*, 51 Ill. 2d 353, 282 N.E.2d 720; *People v. Montgomery* (1981), 96 Ill. App. 3d 994, 422 N.E.2d 226; *People v. Coleman* (1978), 59 Ill. App. 3d 1050, 376 N.E.2d 277.

## C

The State, however, maintains that although neither the defendant nor his attorney expressly waived the right to a jury, the trial court's finding of waiver may be affirmed nonetheless. To do so, the State asks that we extend the rule of *People v. Sailor* (1969), 43 Ill. 2d 256, 253 N.E.2d 397, wherein our supreme court held that a waiver of the right to a jury made by defendant's counsel will be valid

---

[5]We note from the record that from February 11, 1991, when defendant first appeared before the court, until the commencement of trial, July 29, 1991, when the above colloquy took place, this action was continued five times. This could account for the trial court's apparent irritation. The record, however, does not indicate at which party's prompting the continuances were granted. Moreover, the many continuances do not absolve the trial court of its obligation to ensure that defendant does not waive so fundamental a right rashly but does so only after adequate contemplation.

and will bind the defendant if made in his presence and without objection. (See also *People v. Murrell* (1975), 60 Ill. 2d 287, 326 N.E.2d 762.) The State's argument in summary is that since defense counsel knew the consequences of the court's statement that it would hold a bench trial, and yet did not object, she implicitly waived her client's right to a jury trial, and defendant, by remaining silent in view of her acquiescence, is bound to her implicit waiver just as the defendants in *Sailor* and *Murrell* were bound by their attorneys' express waivers.

■ We find this argument unavailing for several reasons. First, the statute itself does not allow the trial court to infer from the defendant's silence that he waives the right to a jury. Rather, the cases construing section 103—6 have held that it is satisfied only by an express waiver made by the defendant or his agent. (See *Smith*, 106 Ill. 2d at 334, 478 N.E.2d at 360 ("[O]ur decisions have imposed on the circuit courts the duty of ensuring that a defendant's waiver of his right to a jury trial be made *expressly* and understandingly") (emphasis added); see also *Frey*, 103 Ill. 2d at 332, 469 N.E.2d at 197; *Kickapoo Creek, Inc.*, 51 Ill. 2d at 356, 282 N.E.2d at 722; *Clark*, 30 Ill. 2d at 220, 195 N.E.2d at 634.) Clearly, none of these cases allows us to find waiver by piling inferences onto inferences as the State's proposed "extension" of *Sailor* would require.

Furthermore, *Sailor* itself does not support the State's proposed extension of its rule. There, the court premised its holding on the pragmatic notion that a defendant normally acts through his agent, the attorney, and that courts necessarily rely on the professional competence of attorneys to ensure that their affirmative acts are made in the interest of adequately representing their clients. Absent this reliance, the court's conducting of a trial would be impracticable, as the judge would constantly be compelled to ask the defendant for assurances that an action taken by his attorney was authorized.

However, given the ambiguity of silence, it would not be reasonable for a trial court to rely on or infer anything from an attorney's acquiescence; the court could never be certain that the silence actually conveys the message it perceives, much less that the defendant approves of that message. For instance, in the case at bar, it may very well be that the silence of the attorney and defendant conveys not a jury waiver, but only a lack of defendant's appreciation of the consequences of the court's finding that he waived a jury trial. This possibility is precisely what section 103—6 was enacted to avoid. Under it, a waiver is valid only if affirmatively and unequivocally made; thus, we are precluded from finding waiver in silence.

More important, in a case not cited by either party, we have already addressed and rejected the State's argument that silence by both the defendant and counsel can constitute a valid waiver of the right to a jury trial. In *People v. Ceaser* (1974), 17 Ill. App. 3d 650, 307 N.E.2d 753, the defendant sought reversal of a conviction after a bench trial because the record was devoid of any indication that he was advised of or waived his right to a trial by jury. The court agreed, rejecting the argument that the waiver was apparent because the defendant sat through three days of trial without a jury while being represented by counsel, and never once objected to the conduct of the trial. The court recognized that any member of the bar would know that the defendant had a right to a jury, and that it was a "commonsense inference" to suggest that both counsel and the defendant by remaining silent implicitly waived the right. The court concluded:

"However, our statute [Ill. Rev. Stat. 1967, ch. 38, par. 103—6] and the case law require more than the drawing of 'commonsense inferences' for the waiver [of the right to jury trial] to be effective. *** For us to say that the defendant here 'understandably waived' a jury trial we must have something more than the face of a three-day trial without a jury. A silent record does not show an affirmative compliance with the statute and this is required." *Ceaser*, 17 Ill. App. 3d at 650-51, 307 N.E.2d at 754.

The State's acquiescence argument here is merely a recasting of the "commonsense inference" argument rejected in *Ceaser*. However, nothing has transpired in the nearly 20-year period since the handing down of that decision to affect the logic of its holding or to warrant a retreat therefrom. Section 103—6 still requires an *affirmative* indication by the defendant or defense counsel which unambiguously manifests a knowing and intelligent waiver of the right to a jury trial. Such a waiver is totally lacking in the record here. Thus, the trial court's finding was clearly erroneous, and, therefore, its judgment of guilty must be reversed and the cause remanded for a new trial. As a final matter, we deem it appropriate to remind the trial attorneys in this case that although our supreme court has held that the onus is on the trial court to determine that the defendant makes a knowing waiver of the right to a jury trial, counsel for the State and the defendant, as officers of the court, have the concomitant duty to maintain the integrity of the criminal justice system. The appeal of this issue and the subsequent remand of this action because of it could easily have been avoided if either the State or defense counsel had simply informed the court that defendant had filed a trial demand and

had requested a jury. The trial court would then have been on notice that, contrary to its mistaken belief, defendant desired a trial by jury. Instead, the attorneys did nothing. They, along with the trial court, share responsibility for the retrial of this action and its additional cost to the taxpayers of Illinois. However, since we may not visit the omissions of the attorneys on defendant and since the trial court failed to carry out its duty to secure an adequate waiver of a jury trial, we are forced to reverse the judgment of the trial court and remand for a new trial.

Reversed and remanded.

McCORMICK, P.J., and DiVITO, J., concur.