THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AARON NEWBERN et al., Defendants-Appellants.

First District (3rd Division)   No. 1—92—3266, 1—92—3268 cons.

Opinion filed November 8, 1995.—Rehearing denied December 19, 1995.

Michael J. Pelletier and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Peter D. Fischer, and Ross M. Eagle, Assistant State's Attorneys, of counsel), for the People.

JUSTICE TULLY delivered the opinion of the court:

Defendants Aaron Newbern, Jim Riley and Gail Bonds were indicted for first degree murder (Ill. Rev. Stat. 1991, ch. 38, par. 9—1 (now 720 ILCS 5/9—1 (West 1994))), aggravated discharge of a firearm (Ill. Rev. Stat. 1991, ch. 38, par. 24—1.2 (now 720 ILCS 5/24—1.2 (West 1994))), home invasion (Ill. Rev. Stat. 1991, ch. 38, par. 12—11 (now 720 ILCS 5/12—11 (West 1994))), attempted first degree murder (Ill. Rev. Stat. 1991, ch. 38, pars. 8—4, 9—1 (now 720 ILCS 5/8—4, 9—1 (West 1994))), conspiracy to commit robbery (Ill. Rev. Stat. 1991, ch. 38, pars. 8—2, 18—1 (now 720 ILCS 5/8—2, 18—1 (West 1994))), residential burglary (Ill. Rev. Stat. 1991, ch. 38, par. 19—3 (now 720 ILCS 5/19—3 (West 1994))), armed robbery (Ill. Rev. Stat. 1991, ch. 38, par. 18—2 (now 720 ILCS 5/18—2 (West 1994))), aggravated battery (Ill. Rev. Stat. 1991, ch. 38, par. 12—4 (now 720 ILCS 5/12—4 (West 1994))) and aggravated unlawful restraint (Ill. Rev. Stat. 1991, ch. 38, par. 10—3.1 (now 720 ILCS 5/10—3.1 (West 1994))). The State entered a *nolle prosequi* as to the charges of conspiracy, aggravated battery, aggravated unlawful restraint and aggravated discharge of a firearm. All defendants were tried simultaneously in severed trials; Bonds in a bench trial, with Newbern and Riley before separate juries. Following trial, Bonds was acquitted of first degree murder and found guilty of armed robbery and residential burglary; Riley

was found guilty of home invasion and residential burglary, but acquitted of all other charges; and Newbern was found guilty of felony murder, armed robbery, home invasion and residential burglary, but acquitted of the other murder counts in the indictments. Newbern was sentenced to 25 years' imprisonment for the first degree murder and to three 6-year sentences for the burglary, armed robbery and home invasion, all sentences to run concurrently. Riley was sentenced to two 6-year terms of imprisonment for the charges of home invasion and residential burglary, both sentences to run concurrently. It is from the judgments of conviction that Newbern and Riley separately appealed to this court pursuant to section 6 of article VI of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Supreme Court Rule 603 (134 Ill. 2d R. 603). We consolidated the appeals. Bonds is not a party to this appeal.

For the reasons that follow, we affirm in part and reverse in part and remand with directions.

## FACTUAL BACKGROUND

The following facts were adduced at trial. John Thomas was the owner of the three-flat apartment building situated at 8053 S. Champlain Avenue, Chicago, Illinois. His two sons resided there. One of the owner's sons, Eric Thomas (hereinafter Eric), lived on the first-floor apartment with his girlfriend, Elizabeth Richardson, and a boarder, Lisa Harding. The other son, Bronson Thomas (hereinafter Bronson), lived on the second-floor apartment. James Graham lived on the third floor. Willie Parnell and Estelle Self were visiting the first-floor residents on January 26, 1991.

Graham testified that he worked as a switchman for the Burlington Northern Railroad. At the time of the incident, he was 56 years old. He had known Bonds for about four years. On January 26, 1991, at approximately 5 p.m., Bonds had visited Graham and left his apartment 30 to 40 minutes later, after drinking, smoking cocaine and having sex with him. Later that night, Bonds telephoned Graham and arranged to go to his apartment to purchase cocaine.

At around 7:30 p.m., Bonds, Newbern and Riley arrived at 8053 S. Champlain Avenue. Graham testified that Bonds rang his apartment, and he buzzed her upstairs. Newbern and Riley also entered the building at this time. Once in Graham's apartment, Bonds purchased cocaine and had a drink with him. As she was leaving, Graham opened the door, and simultaneously, Newbern and Riley pushed their way in, announcing that they were the police. Newbern held up a gun. Graham testified that he did not believe they were police officers. He took hold of the gun and struggled with Newbern.

Defendant shouted repeatedly, "Do you want to die, nigger[?]" Riley grabbed Graham and began choking him. Graham let go of the gun and Riley hit him several times in the face.

Defendants queried Graham as to where his money was. Riley then took between $300 and $400 from Graham's wallet. In addition, defendants took a gun, a telephone book, and a Crown Royal bag with money in it and then fled.

Parnell, Self and Harding testified that they had seen all three defendants enter the building while they were exiting. Parnell and Harding then had returned to the building to retrieve something while Self waited in a car outside. Parnell and Harding began talking to Eric and Richardson in the hallway, when they heard a voice shouting "I'll kill you, turn it lose [sic], mother fucker, I'll kill you." Eric gave Parnell, who remained on the first floor, a shotgun. Eric and Richardson then ran upstairs to Bronson's apartment. Richardson testified that as she went upstairs, she saw Bonds running downstairs and out of the building. Afterwards, Bronson fired a gun straight ahead at the second-floor landing wall. At the same time, Eric yelled out to Newbern and Riley that they should not come downstairs and that the police were on their way. Eric and Richardson went back into Bronson's apartment and shut the door. Bronson and Richardson then stood behind the door.

A short time later, Newbern and Riley exited Graham's apartment. Richardson looked through the peephole and observed Newbern and Riley coming downstairs. While passing the second-floor apartment, Newbern fired two to four shots at the door. One of the bullets hit Richardson's left arm. Another bullet hit Bronson in the shoulder and he fell. Richardson then hauled Bronson to the bathroom where he subsequently died.

Self testified that she had remained in the double-parked vehicle and saw Bonds leave the building and get into a car. Bonds continuously honked the horn because her egress was blocked off. Since Self could not drive, she honked her horn until Harding came out and moved the car, allowing Bonds to leave. Self testified that shortly afterwards, she observed both Newbern, who was carrying a gun, and Riley come out laughing.

Chicago police officer Kenneth Malkowski testified that he had proceeded to 8053 S. Champlain Avenue after receiving an assignment. He knocked on the door of the third-floor apartment and Graham answered. Malkowski testified that he saw Graham's face. It was badly bruised and his eyes were swollen. Graham gave the officer Bonds' telephone number, and from that information Malkowski was able to learn that Bonds resided at 15155 Sunset Drive, Dolton, Il-

linois. Officer Michael Frazier interviewed Elizabeth Richardson. The Chicago police officers then met Dolton police officer John Roe, who was assigned to the case, and proceeded to 15155 Sunset Drive. Malkowski testified that Bonds permitted him to enter the residence. Malkowski searched the house, and with Bonds' permission, forcibly entered the bathroom, where he found Newbern and Riley with a gun. Thereafter, Newbern and Riley were arrested and made statements to the police.

Detective James Butler of the Chicago police department testified that he found Bronson dead in the bathroom of the second-floor apartment at 8053 S. Champlain Avenue. He further testified that he inspected the bullet holes in the door and in the second-floor landing wall. At Dolton, Detective Butler searched Riley's car and recovered a Crown Royal bag with items inside. Detective Butler returned to the Chicago police Area 2 headquarters to conduct lineups. Two witnesses positively identified Newbern, although Graham could not. One witness identified Riley. Deputy Cook County Medical Examiner Edmund Donoghue had examined Bronson and concluded that he had died from an atypical gunshot wound to the right shoulder and a contusion on top of the shoulder and forehead.

## ISSUES PRESENTED FOR REVIEW

In this consolidated appeal, the issues are as follows. Newbern first argues that he was denied effective assistance of counsel. Second, Newbern contends that the trial court abused its discretion in sentencing him. Third, Newbern argues that his armed robbery conviction should be vacated because it is a lesser included offense of felony murder. Finally, Newbern contends that his residential burglary conviction should be vacated since the home invasion conviction is based on the same entry. Riley first argues that the Illinois Pattern Jury Instructions on the home invasion count were erroneous. Second, Riley contends that his residential burglary conviction should be vacated as it is premised on the same entry as the home invasion conviction.

## OPINION

We now turn to the issues at hand. Newbern claims that his constitutional rights to effective assistance of counsel were violated. Newbern asserts that his trial counsel conceded facts, pursued incorrect legal interpretations, presented no theory of innocence to the jury, and did not tender jury instructions on a lesser included offense of involuntary manslaughter. We disagree.

The right to effective assistance of counsel is guaranteed by the

sixth and the fourteenth amendments to the United States Constitution. (U.S. Const. amends. VI, XIV.) This right is also affirmed by section 8 of article I of our 1970 Illinois Constitution. (Ill. Const. 1970, art. I, § 8.) The Illinois Supreme Court in *People v. Albanese* (1988), 125 Ill. 2d 100, 531 N.E.2d 17, adopted the standard set forth by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, for determining whether a criminal defendant was denied effective assistance of counsel. In order for a defendant to prevail when challenging the effectiveness of his trial counsel, he must demonstrate that: (1) his counsel's performance was deficient, in essence, falling below an objective standard of reasonableness, and (2) but for defense counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246, 1255; *People v. Fauntleroy* (1992), 224 Ill. App. 3d 140, 164, 586 N.E.2d 292, 307.

■ Under the first part of the test, in order to determine whether trial counsel's representation fell below an objective standard of reasonableness, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." (*Strickland*, 466 U.S. at 688, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) Thus, we need to examine whether trial counsel made serious errors or performed so deficiently that he fell below the objective reasonable standard. In the case *sub judice*, Newbern argues that no valid legal theory of innocence was presented nor did trial counsel pursue correct interpretations of the law. The State asserts that trial counsel's performance met the objective standards of reasonableness. After careful review of the record, we agree with the State. It is clear from the record that trial counsel thoroughly cross-examined the witnesses, filed all the necessary motions, and made appropriate objections. Trial counsel further secured a reduction in the number of charges pending against Newbern. In addition, trial counsel attacked Graham's credibility by contending that he was a drug dealer living in a crack house and attempted to reinforce Newbern's credibility by bringing in corroborating witnesses. Finally, trial counsel introduced all *possible* defenses in order to rationally explain Newbern's actions, including self-defense, no intent to kill and no taking of property. We conclude that all the actions, strategies and theories tendered by counsel were reasonable. Thus, the defendant did not meet his burden in proving that his trial counsel's assistance was ineffective.

Next, Newbern contends that the trial court abused its discretion

in sentencing him to 25 years' imprisonment for first degree murder. Newbern argues that neither the nature of the offense nor his rehabilitative potential justified more than the minimum sentence of 20 years, especially in light of his contention that the killing was unintentional. We cannot agree.

Pursuant to Supreme Court Rule 615(b)(4) (134 Ill. 2d R. 615(b)(4)), the appellate court has the power to reduce sentences. Our State constitution mandates that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." (Ill. Const. 1970, art. I, § 11.) In Illinois, felony murder is a felony which carries a sentencing range of not less than 20 nor more than 60 years. (730 ILCS 5/5—8—1 (West 1994).) When a sentence is imposed within statutory limits, it will not be disturbed absent an abuse of discretion (*People v. Gutirrez* (1990), 205 Ill. App. 3d 231, 564 N.E.2d 850), or unless it is manifestly disproportionate to the nature of the offense (*People v. Cabrera* (1987), 116 Ill. 2d 474, 508 N.E.2d 708). A trial court's judgment with regard to the appropriate punishment is entitled to great deference (*People v. Illgen* (1991), 145 Ill. 2d 353, 583 N.E.2d 515) as it is in the best position to determine the circumstances of the case, to weigh the credibility of the witnesses, and to evaluate the evidence. *People v. Calahan* (1995), 272 Ill. App. 3d 293, 297, 649 N.E.2d 588; *People v. Burke* (1987), 164 Ill. App. 3d 889, 518 N.E.2d 372.

■ The record indicates that the trial court appropriately weighed the mitigating and aggravating factors. The trial judge considered Newbern's "exceptional work record," his lack of a prior criminal record, Newbern's remarks, and the particular facts of the case. Merely because Newbern did not agree with the weight given to each of the factors does not give rise to the inference of an abuse of discretion.

■ Newbern next claims that his conviction for armed robbery must be vacated as it is a lesser included offense of the charge of felony murder. Initially, we begin our discussion of this issue by noting that a point raised but not argued or supported by citation to relevant authority fails to meet the requisites of Supreme Court Rule 341(e)(7) (134 Ill. 2d R. 341(e)(7)) and, therefore, is deemed waived. (*Brown v. Tenney* (1988), 125 Ill. 2d 348, 362, 532 N.E.2d 230.) Supreme Court Rule 612 makes Rule 341 applicable to criminal appeals. (See 134 Ill. 2d R. 612(i).) Accordingly, any issue not clearly defined and sufficiently presented is also deemed waived. (*Vincent v. Doebert* (1989), 183 Ill. App. 3d 1081, 1087, 539 N.E.2d 856.) Here, none of the case law that Newbern cites for this proposition is even tangentially related. Moreover, as the State has pointed out, he fails

to explain how he has determined that the armed robbery conviction, and not the home invasion or residential burglary charge, was the predicate felony given that the jury returned a guilty verdict without distinguishing the predicate felony. Accordingly, we find this issue waived for failure to cite any *relevant* authority.

■ Another issue arises when both Newbern and Riley appeal to have their residential burglary convictions vacated since they were convicted for home invasion. The State agrees that the residential burglary conviction and sentence should be vacated for both Riley and Newbern. If more than one offense arises out of the same physical act, a defendant may not be convicted for more than one offense. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) Here, the home invasion count and the residential burglary count were predicated on the same unlawful entry into a person's dwelling. In this case, only the home invasion conviction will be upheld since there was only one physical act of entry. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011.) Accordingly, we vacate the residential burglary convictions.

Next, Riley argues that the jury instructions for the home invasion charge and the verdict forms tendered to the jury violated his Federal and State constitutional rights to due process, trial by jury, and a unanimous jury verdict. Riley complains that the general verdict violated the Illinois unanimity requirement as the jury may not have unanimously agreed on the specific elements of the home invasion count. Riley requests a new trial. The State initially responds by urging that this issue has been waived. The State notes that only vague objections were made, such as the jury instructions were "ambiguous" and "confusing." Counsel did not object on a specific basis.

■ Pursuant to Supreme Court Rule 451(b), "[c]ounsel may object *** to any instruction prepared at the court's direction. *** The grounds of the objections shall be particularly specified." (134 Ill. 2d R. 451(b).) Moreover, a defendant must object specifically in order to afford a trial court the opportunity to correct any errors in the instructions before they are given. (*People v. Smith* (1991) 209 Ill. App. 3d 1043, 1055, 568 N.E.2d 482; *People v. Burns* (1986), 144 Ill. App. 3d 345, 355, 494 N.E.2d 872, 880.) In the present case, trial counsel objected to the home invasion instruction on the basis of ambiguity. In his post-trial motion, Riley objected to the instruction as confusing. We note that these objections were insufficient, since they were not made with sufficient specificity. The trial court was not afforded an opportunity to correct any of the cited errors. The trial judge simply ruled on these general objections when made. Thus, Riley cannot now bring this issue on appeal.

In light of the foregoing, the judgment of the circuit court of Cook County is affirmed in part and reversed in part and remanded for the purpose of correcting defendant's mittimus as indicated above.

Affirmed in part and reversed in part and remanded with direction.

GREIMAN, P.J., and RIZZI, J., concur.