THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYRONE STOKES, Defendant-Appellant.

First District (1st Division)   No. 1—93—4491

Opinion filed June 17, 1996.

CAMPBELL, J., dissenting.

Michael J. Pelletier, Karen Daniel, and Jane Raley, all of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Sari London, Assistant State's Attorneys, of counsel), for the People.

JUSTICE WOLFSON delivered the opinion of the court:

This case concerns the trial judge's obligation to ensure that a defendant's jury waiver in a criminal case comports with constitutional and statutory requirements.

After simultaneous bench trials, defendant Tyrone Stokes and co-defendant James Elmore were convicted of residential burglary and home invasion (720 ILCS 5/19—3, 5/12—11(a)(2) (West 1992)). Each was sentenced to a prison term of seven years. On appeal, Stokes contends that his jury waiver was invalid, that the trial court inadequately investigated his post-trial allegation of ineffective assistance of counsel, and that his conviction for residential burglary must be vacated pursuant to the one-act-one-crime rule. We affirm.

## FACTS

The defendant, Tyrone Stokes (Stokes), and his codefendant, James Elmore (Elmore), were tried for residential burglary and home invasion on September 7, 1993. At the beginning of the trial, the only discussion about the defendants' jury waivers was:

"THE CLERK: James Elmore and Tyrone Stokes.

THE COURT: All right. Both sides answering ready. Gentleman [*sic*], Mr. Stokes, you understand you have a constitutional right to trial by jury. By signing this document you understand you are waiving your constitutional right by [*sic*] jury. How about you Mr. Elmore?

DEFENDANT ELMORE: Yes.

THE COURT: Understand by signing this document you are waiving your constitutional right by [*sic*] trial by jury?

DEFENDANT ELMORE: Yes[.]

THE COURT: Do you understand you've a constitutional right to trial by jury and only you can waive that right?

DEFENDANT ELMORE: Yes.

THE COURT: And you know what a jury trial is?

DEFENDANT ELMORE: Yes.

THE COURT: Understand you have a constitutional right to trial by jury?

DEFENDANT ELMORE: Yes.

THE COURT: You understand what a jury trial is?

DEFENDANT ELMORE: Yes.

THE COURT: And you want me to hear this case as opposed to a jury?

DEFENDANT ELMORE: Yes.

THE COURT: Okay. Any opening statement?"

The half-sheet entry for September 7, 1993, stated: "Bench Trial Jury waivers signed & filed ea deft [*sic*] \*\*\*." The record contains Stokes' signed, written jury waiver form dated September 7, 1993, in which he waived jury trial and submitted the cause to the court.

The State's evidence disclosed that at approximately 6:15 p.m. on December 5, 1992, Elmore, Stokes, and a juvenile pushed their way inside the residence of Johnny Thornton (Thornton) and Patricia Hooks (Hooks) at 101 West 109th Street in Chicago. Thornton and Hooks recognized Elmore, who lived directly across the street from them. Hooks immediately went out the back door and used a neighbor's telephone to call Chicago police. Meanwhile, Elmore shoved Thornton against a wall and demanded $200. Thornton responded that he did not owe Elmore $200. Elmore again pushed Thornton against the wall, injuring his head, and ordered the others to take a television set from the bedroom. The assailants then took the television set and fled.

The Chicago police arrived in time to see the defendants running across the street and into a coachhouse. Elmore was carrying the television set. The other two assailants were nearby. After the police arrested them and brought them out of the coachhouse, Thornton identified them as the offenders.

Elmore called his friend Katherine Darnell as a defense witness. She testified that she had been smoking cocaine with Thornton and Hooks when someone knocked at the door. Thornton asked the women to go to the back room. While Darnell was in the back room, she heard Thornton open the door and say "bye." Thornton then came to the bedroom and stated that he "gave them the TV until he gets money on the first to pay for his drugs." She did not see Thornton being pushed against the wall and she did not see anyone taking the television set.

At the conclusion of the trial, the trial court convicted Stokes and Elmore of residential burglary and home invasion.

During post-trial proceedings, Stokes' counsel requested leave to withdraw from the case. He informed the trial court that he had spoken with Stokes and Stokes' parents, and that Stokes alleged that counsel had prevented him from testifying. The trial court responded that counsel's representation of Stokes had been "exemplary" and that Stokes had received a "fair and impartial" trial. The trial court asked defense counsel to state his position, and the following colloquy ensued:

"[DEFENSE COUNSEL]: Let me state this: we did plan on hav-

ing [defendant] testify as to why he happened to be on the scene at the time of the incident. We did plan on having a friend of his, Mr. Bovan (phonetic spelling), who was in court several times in this matter, testify. He was across the street and a friend of [defendant's] and he would have testified that [defendant] had been at his house and was called over there or went over after the two waived [sic] to him. We did plan that. It was a judgment call. During the trial we—You may recall—

THE COURT: I recall the facts.

[DEFENSE COUNSEL]: She testified she was at Mr. Thornton's [sic] apartment with two other girls. I didn't know we could find another one of those woman [sic]. Co-counsel did find her and who did testify that day. When I spoke to [defendant] I told him I thought she was the better witness. So it was a judgment call. That's where we are.

THE COURT: You're making a motion to withdraw. That will be denied."

## OPINION

### The defendant's waiver of a jury trial

Stokes did not object to proceeding to trial without a jury. Nor did he raise the issue in his written motion for a new trial.

Both an objection at trial and a written post-trial motion are required to preserve an issue for review. *People v. Williams*, 165 Ill. 2d 51, 60, 649 N.E.2d 397 (1995); *People v. Turner*, 128 Ill. 2d 540, 555, 539 N.E.2d 1196 (1989); *People v. Enoch*, 122 Ill. 2d 176, 186-87, 522 N.E.2d 1124 (1988).

This court, however, may review plain errors affecting substantial rights under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)) even if those errors were not brought before the trial court. Pursuant to this rule, this court has consistently elected to review defendants' claims of invalid jury waivers because a fundamental right is implicated. See *People v. Potts*, 277 Ill. App. 3d 567, 660 N.E.2d 560 (1996); *People v. Jennings*, 268 Ill. App. 3d 439, 444, 644 N.E.2d 1199 (1994); *People v. Watson*, 246 Ill. App. 3d 548, 616 N.E.2d 649 (1993); *People v. Steiger*, 208 Ill. App. 3d 979, 981, 567 N.E.2d 660 (1991); *People v. Williams*, 125 Ill. App. 3d 284, 286, 465 N.E.2d 1044 (1984); *People v. French*, 84 Ill. App. 3d 60, 61, 404 N.E.2d 1136 (1980); *People v. Bristow*, 80 Ill. App. 3d 535, 538, 400 N.E.2d 511 (1980); *People v. Walton*, 77 Ill. App. 3d 905, 396 N.E.2d 841 (1979); *People v. Banks*, 71 Ill. App. 3d 15, 18, 389 N.E.2d 180 (1979).

Because of the importance of the right to a jury trial, this court will review the validity of the defendant's jury waiver.

■ The accused in a criminal proceeding has a constitutional right to a jury trial (U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13) unless he understandingly waives the right in open court. 725 ILCS 5/103—6 (West 1992). To be valid, this waiver must be in writing. 725 ILCS 5/115—1 (West 1992).

The defendant who challenges a jury waiver bears the burden of establishing that the waiver was invalid. *Adams v. United States ex rel. McCann*, 317 U.S. 269, 281, 87 L. Ed. 268, 274, 63 S. Ct. 236, 241 (1942).

Although the preferred procedure is for the trial court to advise the defendant of his right to trial by jury before the defendant waives this right in writing or in open court for the record, this procedure is not constitutionally required. *People v. Murrell*, 60 Ill. 2d 287, 291, 326 N.E.2d 762 (1975). The trial court is not required to explain to the defendant the consequences of his jury waiver. *People v. Nelson*, 17 Ill. 2d 509, 511, 162 N.E.2d 390 (1959); *Steiger*, 208 Ill. App. 3d at 981. There is no set formula to determine the validity of a jury waiver. *People v. Sandham*, 276 Ill. App. 3d 86, 88, 657 N.E.2d 719 (1995); *People v. McGee*, 268 Ill. App. 3d 582, 585, 645 N.E.2d 329 (1994). Whether a jury waiver was knowingly and understandingly made depends on the facts and circumstances of the particular case. *People v. Frey*, 103 Ill. 2d 327, 332, 469 N.E.2d 195 (1984).

First, we must decide whether there is any real issue concerning judicial admonitions to the defendant in open court. It is the State's position that the report of proceedings filed in this court is not accurate. The State contends that the court reporter incorrectly ascribed all responses to Elmore when it is obvious the trial court's remarks were directed at both defendants and both defendants must have responded.

We do not accept the State's attempt to rewrite the record through argument. Supreme Court Rule 329 establishes a procedure for correcting a record, either before or after it is submitted to the reviewing court. The State, to this day, has not availed itself of that procedure.

At the same time, the report of proceedings does show that at the outset of his remarks, the trial judge addressed Stokes directly: "Mr. Stokes, you understand you have a constitutional right to a trial by jury. By signing this document you understand you are waiving your constitutional right by [*sic*] jury."

The record does not show that Stokes responded to that or any other admonishment by the judge. It appears, however, that Stokes had signed a written jury waiver earlier that day. It is clear that the trial judge repeated many of his questions about the jury waiver.

Only Elmore responded. The record does not reflect a single word being uttered by Stokes or his lawyer during the admonishments, although it is undisputed that they were present as the judge spoke about the right to a jury trial and then began the trial without a jury.

■ While this is a close case, we conclude that the jury waiver was made with the defendant's knowledge and consent. Our supreme court has "not required that the record affirmatively establish that the court advised defendant of his right to a jury trial and elicited his waiver of that right (*Murrell*), nor that the court or counsel advised defendant of the consequences of the waiver." *Frey*, 103 Ill. 2d at 332.

We understand that a signed written jury waiver alone is not enough to demonstrate an understanding waiver of the right to a jury trial. *People v. Sebag*, 110 Ill. App. 3d 821, 828, 443 N.E.2d 25 (1982). But the signed waiver, viewed with other circumstances, can "lessen[ ] the probability that the waiver was not made knowingly." *Steiger*, 208 Ill. App. 3d at 982.

We believe this case is controlled by *Frey*. There, as here, the defendant was present in open court when a jury waiver was discussed. That discussion contained less of an explanation of the right to a jury trial than did the trial judge's comments in this case. The defendant in *Frey* did not sign a written jury waiver. But the court found a waiver in "defendant's silent acquiescence in the judge's statement in his presence on the day of [the] trial that all counts were set for [a] bench trial" (*Frey*, 103 Ill. 2d at 333). To find otherwise, said the court, would be to allow the defendant to " 'gamble on the outcome before the judge without a jury and then if dissatisfied make a belated demand for a jury.' " *Frey*, 103 Ill. 2d at 333, quoting *People v. Novotny*, 41 Ill. 2d 401, 409, 244 N.E.2d 182 (1968). This court has held that to allow the defendant to make that kind of gamble would be "insufferable." *People v. George*, 263 Ill. App. 3d 968, 972, 636 N.E.2d 682 (1993).

In *People v. Jones*, 93 Ill. App. 3d 475, 417 N.E.2d 647 (1981), the defendant signed a written jury waiver, but the only in-court mention of a jury waiver took place when the trial judge said, in the defendant's presence, "Mr. Jones has previously waived his right to trial by jury." We found that to be an understanding waiver of the right to trial by jury. Also see *People v. Lewis*, 89 Ill. App. 3d 840, 412 N.E.2d 565 (1980).

Here, the trial judge directly addressed this defendant concerning the "constitutional right to a jury trial" and his understanding of the effect of signing a waiver. The defendant's lawyer made no objec-

tion then or later to proceeding directly to a bench trial. The defendant was a high school graduate who had attended one year of junior college. He had prior arrests. In addition, he was sophisticated enough to make what the trial judge described as an "eloquent" speech when he requested leniency, and he filed *pro se* post-trial motions seeking sentence credit and release of his bail bond. Those facts separate this case from those where we have held some affirmative in-court statement by the defendant or his lawyer is required before an effective jury waiver can be found. See *People v. Roberts*, 263 Ill. App. 3d 348, 636 N.E.2d 86 (1994). Also see *People v. Richardson*, 32 Ill. 2d 497, 500, 207 N.E.2d 453 (1965).

While we conclude that the unusual facts in this case add up to a knowing and understanding jury waiver, we also note this is the kind of situation that should not occur. The trial judge has a duty to see that the defendant's waiver of his right to trial by jury is expressly and understandingly made in open court. *Jones*, 93 Ill. App. 3d at 479.

This is too important a right to be dealt with in a cavalier and perfunctory manner. Our supreme court has said:

> " 'It takes but a few minutes of a trial judge's time to directly elicit from a defendant a response indicating that he understands that he is entitled to a jury trial, that he understands what a jury trial is, and whether or not he wishes to be tried by a jury or by the court without a jury. This simple procedure incorporated in the record will reduce the countless contentions raised in the reviewing courts about jury waivers.' " *People v. Chitwood*, 67 Ill. 2d 443, 448-49, 367 N.E.2d 1331 (1977), quoting *People v. Bell*, 104 Ill. App. 2d 479, 482, 244 N.E.2d 321 (1968).

### The trial court's inquiry into Stokes' claim that he received ineffective assistance of counsel

Stokes contends that the trial court conducted an insufficient inquiry into his post-trial allegation of ineffective assistance of counsel.

A defendant's post-trial allegation of ineffective assistance of counsel does not automatically require appointment of new counsel. *People v. Williams*, 147 Ill. 2d 173, 251, 588 N.E.2d 983 (1991). The trial court examines the basis of the defendant's allegation. If it lacks merit or involves a question of trial strategy, appointment of new counsel is not required. *People v. Robinson*, 157 Ill. 2d 68, 86, 623 N.E.2d 352 (1993); *Williams*, 147 Ill. 2d at 251. New counsel should be appointed only if the defendant's allegation of ineffective assistance of counsel shows possible neglect of the case. *Robinson*, 157 Ill. 2d at 86; *Williams*, 147 Ill. 2d at 251; *People v. Nash*, 212 Ill. App. 3d 407, 408-09, 570 N.E.2d 1266 (1991). That is:

"[I]t is not necessary to appoint new counsel where a trial judge finds the claim to be spurious, and such a finding will not be overturned on appeal unless the finding is manifestly erroneous." *People v. Woodson*, 220 Ill. App. 3d 865, 877, 581 N.E.2d 320 (1991).

A court of review will not inquire into areas involving counsel's judgment, discretion, trial tactics, or strategy in considering the defendant's claim of ineffective assistance of counsel (*People v. Winchel*, 159 Ill. App. 3d 892, 911-12, 512 N.E.2d 1298 (1987)), because "counsel's informed strategic choices are virtually unchallengeable" (*People v. Jones*, 144 Ill. 2d 242, 270, 579 N.E.2d 829 (1991)).

■ Here, the trial court elicited the basis for Stokes' claim of ineffective assistance of counsel. The basis for Stokes' claim was not possible neglect but rather a nonreviewable question of trial strategy and counsel's judgment as to witnesses, with the defendant's acquiescence. The trial court explicitly found that Stokes had received exemplary representation and a fair and impartial trial. Stokes' claim of ineffective assistance of counsel was spurious. Stokes complains that the trial court did not personally ask him about his claim. At the same time, Stokes was sufficiently sophisticated to have addressed the trial court personally during allocution and to have filed *pro se* post-trial motions seeking sentence credit and release of his bail bond. He did not, however, try to address the trial court personally concerning his claim of ineffective assistance of counsel.

Under these circumstances, the trial court did not commit manifest error when it did not make any further inquiry into defense counsel's conduct of the trial.

## Stokes' conviction for residential burglary and his conviction for home invasion

In Stokes' final issue, he contends that his conviction for residential burglary must be vacated because it was based upon the same physical act as his conviction for home invasion: the unlawful entry of Thornton's dwelling. The State responds that the one-act-one-crime rule does not apply to this case.

■ Multiple convictions and concurrent sentences cannot be "carved from the same physical act." *People v. King*, 66 Ill. 2d 551, 566, 363 N.E.2d 838 (1977). Factors to be considered in determining whether the defendant's conduct constituted a single physical act or several separate and distinct acts are (1) prosecutorial intent, as reflected in the language of the indictment; (2) the existence of an intervening act; (3) the time interval between successive parts of the defendant's conduct; (4) the victim's identity; (5) the similarity of the acts; and (6) the location of the acts. *People v. Ellis*, 143 Ill. App. 3d 892, 895-96, 493 N.E.2d 739 (1986).

This test was recently discussed in *People v. Rodriguez*, 169 Ill. 2d 183, 661 N.E.2d 305 (1996). While not specifically rejecting or endorsing the six-part test, the court held that we should be mindful in applying the *King* doctrine that an act is simply " 'any overt or outward manifestation which will support a different offense.' " *Rodriguez*, 169 Ill. 2d at 188, quoting *King*, 66 Ill. 2d at 566.

■ There is conflicting case law concerning the viability of multiple convictions for home invasion and burglary or residential burglary. The better view was expressed in *People v. Jones*, 148 Ill. App. 3d 133, 144-45, 498 N.E.2d 772 (1986):

"[A]lthough home invasion and residential burglary may share the physical act of entry, they are not based upon the same physical act. *** [W]hile residential burglary is complete once an unlawful entry is made with the requisite intent, home invasion is not complete until, after an unlawful entry, defendant *** intentionally causes any injury to a person in the home. *** [R]esidential burglary and home invasion are not based on the same physical act as the common element of unlawful entry does not complete the offense of home invasion."

But see *People v. Newbern*, 276 Ill. App. 3d 623, 659 N.E.2d 6 (1995).

Here, the evidence disclosed that Elmore, accompanied by Stokes and a juvenile, initially pushed his way inside Thornton's residence. Following his unlawful entry, he demanded money from Thornton. When Thornton refused to pay, Elmore shoved, struck, and intentionally injured him. He then instructed his cohorts to take Thornton's television set, which they did. The demand for money and the refusal to comply intervened between the entry and the injury.

Furthermore, the charging instrument alleged only one physical act in the residential burglary count—the unlawful entry, while it alleged two physical acts in the home invasion count—the unlawful entry and the intentional injury to Thornton. Thus, the evidence and the prosecutorial intent shown by the language of the charging instrument established that although Stokes' convictions shared one physical act—the unlawful entry of Thornton's residence—the home invasion conviction required the additional physical act of the intentional injury inflicted upon Thornton. Given that Stokes' convictions were based on several separate and distinct acts, he was properly convicted of both offenses.

CONCLUSION

We affirm the defendant's convictions and sentences.

Affirmed.

BRADEN, J., concurs.

PRESIDING JUSTICE CAMPBELL, dissenting:

I respectfully dissent from the opinion of the majority. While I agree with the majority that this case is controlled by the law established in *People v. Frey*, 103 Ill. 2d 327, 469 N.E.2d 195, I would conclude that the present case is distinguishable from *Frey*, and that here, the trial court failed to adequately admonish defendant of his right to a jury trial.

In *Frey*, the defendant was indicted on two counts of reckless homicide and one count of driving while under the influence of intoxicating liquor (DUI). Frey pleaded not guilty to all charges and a jury trial was scheduled. However, numerous continuances delayed the trial for over one year. Seven months prior to trial, the trial judge entered an order stating that "the defendant's attorney indicates the defendant will waive a jury trial in this case." Subsequent continuance orders also indicated bench-trial status, and the record indicated that Frey was present on several occasions when a bench trial was discussed. Thereafter, the parties agreed to try the reckless homicide charges before the DUI charge and stipulated that most of the evidence presented in the first trial could be considered by the trial judge in the subsequent DUI trial. At the first trial, defense counsel announced that defendant was ready to proceed with his bench trial. Frey was acquitted. A bench trial on the DUI charge on the following day resulted in Frey's conviction and sentence to one year's probation. *Frey*, 103 Ill. 2d at 331.

On appeal, this court ordered a new trial, finding that the record failed to support a finding that Frey either implicitly or explicitly waived a jury trial on the DUI charge. However, our supreme court reversed, finding that Frey and his counsel had understood seven months prior to trial that his case would be heard without a jury; that Frey was aware of his right to a jury trial and was present when the jury waiver was discussed; and that defense counsel's willingness to stipulate to the use of evidence presented in the reckless homicide bench trial reflected defense counsel's intent to try the case before the court. The court further noted that Frey was a "real estate syndicator and developer, and a man of intelligence, experience and considerable education," and concluded that the jury waiver was made with Frey's knowledge and consent. *Frey*, 103 Ill. 2d at 333.

Here, the record includes a half sheet indicating that *each* defendant (*i.e.*, "ea deft") signed jury "waivers." Nevertheless, at trial, the trial court announced that defendant had knowingly waived his right to a jury trial without giving defendant the opportunity to respond. This is significant, because the trial court then proceeded to specifically admonish codefendant of his right to a jury trial and the consequences of waiver, and to elicit a knowing waiver from codefendant. Meanwhile, the record shows that the defendant and defendant's counsel remained completely silent.

The majority correctly notes that a signed, written waiver alone is not sufficient to demonstrate an understanding jury waiver, and that it takes "but a few minutes of a trial judge's time" to directly elicit a response from a defendant that he understands his right to a jury trial, and is willing to be tried without a jury. We have before us a record revealing disparate treatment of defendant and codefendant regarding their jury waivers. The record reveals that defendant wrote and signed a jury waiver, but fails to show defendant's understanding of his waiver in open court. Thus, I believe that the majority has reached the wrong result in concluding that defendant was properly admonished. Although the majority indicates that this court found an understanding waiver under similar facts in *People v. Jones*, 93 Ill. App. 3d 475, 417 N.E.2d 647, I find *Jones* distinguishable. *Jones* preceded *Frey* and its determination that a waiver made by defense counsel is valid when made in defendant's presence. Moreover, *Jones* did not involve a codefendant.

In addition, I am not persuaded by the majority's argument that defendant's alleged level of "sophistication" alleviated the trial court's obligation to admonish him in court. The defendant here is not a real estate developer with an advanced education. In addition, *People v. Roberts*, 263 Ill. App. 3d 348, 636 N.E.2d 86 (1994), is not distinguishable from the present case as indicated by the majority. The *Roberts* court found that where the record contained only a docket entry of a jury waiver, and no record of affirmative action by a defendant or by defense counsel in a defendant's presence acknowledging waiver in open court, waiver was invalid. *Roberts*, 263 Ill. App. 3d at 351-52; see also *People v. Evans*, 243 Ill. App. 3d 72, 80, 611 N.E.2d 1263 (1993).

For these reasons, I would find that defendant was inadequately admonished of his constitutional right to a jury trial and would remand this matter for a new trial.